344 So.2d 1002 (1977)
STATE of Louisiana
v.
Lawrence Joseph SCOTT.
No. 58778.
Supreme Court of Louisiana.
April 11, 1977.
*1003 Lila Tritico, New Orleans, Robert S. Rogers, Law Offices of Borne & Rogers, Franklin, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Knowles M. Tucker, Dist. Atty., Bernard E. Boudreaux, Jr., Walter J. Senette, Jr., Edward M. Leonard, Jr., Asst. Dist. Attys., for plaintiff-appellee.
DIXON, Justice.
Defendant, Lawrence Joseph Scott, was charged by grand jury indictment with first degree murder in violation of R.S. 14:30. He pled not guilty and not guilty by reason of insanity. On August 28, 1975, after trial by jury, defendant was found guilty of the responsive verdict of manslaughter. On September 26, 1975 defendant was sentenced to twenty-one years at hard labor. On appeal he relies upon five assignments of error for reversal of his conviction. (Assignment No. 5 was neither briefed nor argued and is, therefore, deemed abandoned. State v. Edwards, 261 La. 1014, 261 So.2d 649 (1972)).
On February 12, 1974 Lee Newsom was found dead in a motel room in Morgan City, Louisiana. The victim had been strangled with a strip of towel, had been beaten about the face and had sustained a number of small puncture wounds in the throat area. His mouth had been gagged and his feet and hands tied. A broken bottle was found near the body. Cause of death was determined to be due to strangulation.
The victim had previously checked into the motel and at that time had arranged for his room to be given to two men, Daniel Beach and defendant, while an adjoining room was given to him. The three men were seen together in a nearby cafe on the night before the body was discovered. Both Beach and Scott were AWOL from the Marine Corps and had gone to Morgan *1004 City in search of work. The day before the homicide Beach and Scott had met the victim who had agreed to help them secure work. Beach and Scott had disappeared by the time the body was discovered, but an investigation led to Scott's arrest in New York. After an extradition hearing defendant was returned to Louisiana. (Beach was separately apprehended and convicted of second degree murder. His conviction was affirmed on appeal. State v. Beach, 320 So.2d 142 (1975)).

Assignments of Error Nos. 1 and 2
In these assignments of error defendant argues that the trial court erred in admitting written and oral statements of the accused into evidence on the basis that the State did not affirmatively show that the defendant voluntarily, intelligently and knowingly waived his rights. At the hearing on the motion to suppress the confession, Captain Radcliff of the Morgan City Police Department testified that on May 23, 1974 he picked defendant up in New York, following the extradition hearing, and brought him back to Morgan City in a commercial airplane. He stated that although defendant wanted to discuss the case while in New York, the detective told him he should wait until they reached Morgan City. The officer testified that while in New York he advised defendant of his rights but did not discuss the case any further.
In Morgan City Captain Radcliff and defendant met with Detective Dorsett who testified that it was he who took a statement from defendant. Officer Dorsett stated that prior to any questioning he advised defendant of his Miranda rights and that he asked defendant as to each separate right if he understood them. Defendant responded in the affirmative and signed a waiver of rights form. Detective Dorsett testified that no threats, coercion or other forms of intimidation were used against the defendant. He stated that after an oral statement was made a secretary transcribed it and after reading it defendant made no changes and signed the bottom of the statement. Captain Radcliff also indicated that he used no threats against the accused. Captain Radcliff advised defendant of what crime he was charged with and admitted that he may have mentioned that the co-defendant, Beach, had previously given a statement. The defendant did not testify at the motion to suppress.
C.Cr.P. 703 provides that the State has the burden of proving that a purported written confession was made freely and voluntarily and was not made under the influence of fear, intimidation, duress, menaces, threats, inducements or promises. In addition, defendant must be advised of his constitutional rights prior to questioning. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The circumstances surrounding the taking of the confession support the trial judge's conclusion that the State had met its burden of proving the statements were voluntarily made. Defendant did not testify to cast any doubt upon the officers' testimony.
These assignments lack merit.

Assignment of Error No. 3
Defendant pled not guilty and not guilty by reason of insanity. In addition to this defense, defendant contended that due to his voluntarily induced state of intoxication, he could not form the requisite specific intent to kill or inflict great bodily harm. Evidence adduced at trial indicated that defendant may have suffered from blackouts in the past due to alcohol intake and that he may have suffered one of these blackouts on the night of the homicide. These blackouts did not result in unconsciousness but merely a resultant loss of memory after a person has sobered. The evidence did not reveal that defendant suffers from any mental disease or defect to such a degree that on the date in question he could not have distinguished right from wrong. An expert called by the defense testified that if defendant had a blackout at the time of the murder he would not have distinguished right from wrong; the State's expert contradicted this opinion.
The trial judge instructed the jury concerning the defenses of intoxication and *1005 insanity. Defense counsel made no objections at that time. After deliberating some time, the jury returned to the court and asked the court to redefine these defenses as well as second degree murder and manslaughter. After the judge gave these definitions the foreman asked: "The question has arisenif a man drinks so much, is that insanity?" The judge replied:
"Well, I don't mean to dodge your question, Mr. Luquette. I'd rather go back and look, rather than shoot from the hip. I have to say, `No,' as a matter of law, not as a matter of fact. There are two separate and distinct defenses. One is intoxication, which is a defense if the intoxication is so great that there was no specific intent. If you find, for instance, that the defendant was so intoxicated that he could not have the specific intent to commit the murder, then you cannot return a verdict of First Degree Murder nor can you return a verdict of Second Degree Murder, but you could return the verdict of Manslaughter.
"If you find that he's insane as I've described it and you find that he actually killed the victim, then you have to return the verdict of Not Guilty by Reasons of Insanity. If you find that he didn't do it at all, of course, then you would come in with Not Guilty.
"BY MR. LUQUETTE: Thank you very much. You're quite clear."
Defense counsel immediately objected because of the "instruction that a person cannot be found insane due to intoxication. . . " In this assignment of error defendant contends that the court erred because the instruction was an erroneous statement of the law. He contends that a person who is intoxicated can lose ability to form specific intent and to distinguish right from wrong. According to the defendant, therefore, the defenses of insanity, R.S. 14:14, and intoxication, R.S. 14:15, can be read together to reach such a result.
Insanity is a defense to any crime when the circumstances indicate "that because of a mental disease or mental defect the offender was incapable of distinguishing between right and wrong with reference to the conduct in question . . " R.S. 14:14. Voluntarily induced intoxication, however, is only a defense when the condition "has precluded the presence of a specific criminal intent or of a special knowledge required in a particular crime. . . " R.S. 14:15. Thus, it provides no defense to crimes only requiring a general intent. State v. Boleyn, 328 So.2d 95 (La. 1976).
We are not presented with the question of whether habitual drinking can legally result in some mental defect which thereby renders a person incapable of distinguishing between right and wrong. We are merely confronted with the issue of whether a person who has voluntarily induced an intoxicated state can escape criminal responsibility because while so intoxicated he could not distinguish between right and wrong. A reading of the record in context reveals that it was this latter point that the jury was concerned with. They were concerned if solely due to an intoxicated state a person cannot distinguish between right and wrong, would the legal defense of insanity be established, as opposed to seeking an answer to the question of whether some mental disease or defect that had been caused by intoxication or habitual drinking would be a sufficient defense if such mental condition precluded the ability to distinguish between right and wrong. The judge's answer was accordingly restricted to this scope, and he informed them that the two defenses are separate and distinct. In fact, defendant in brief and in the trial court was concerned that the judge's instruction had precluded the jury from finding that solely because defendant was intoxicated and could not therefore distinguish between right and wrong, he was exempt from criminal responsibility. Defense counsel has not shown any concern that the instruction affected the jury's ability to render a verdict of not guilty by reason of insanity if it determined that, due to defendant's excessive drinking history, he suffered some mental disease or defect which rendered him incapable of distinguishing between right and wrong. The *1006 judge's instruction left this avenue open for consideration.
As properly viewed, the issue this assignment raises does not present reversible error. The legislature obviously intended that a person should be held responsible for the consequences of his voluntarily induced intoxication. Thus, in a crime requiring general criminal intent the requisite intent is "generally found in the accused's intention to become intoxicated, i.e., the accused is held to have intended, in law, all the consequences of his intoxicated condition." State v. Boleyn, supra, at 99. The exception the legislature provided for is when the intoxicated condition precluded the formation of specific intent; in such a case, intoxication does provide a defense. To the extent, however, that a person is incapable of distinguishing between right and wrong solely due to an overly intoxicated condition, without some additional proof of mental disorder, the legislature intended to prevent such drunkenness from becoming a defense to a general intent crime. See Reporter's comments to R.S. 14:15.
Accordingly, we find that this assignment of error does not present reversible error.

Assignment of Error No. 4
In this assignment defendant contends that the trial court erred in admitting over objection three color photographs which depicted the scene of the crime and the victim as he was found by police. Defendant argues that these pictures were gruesome in nature and that their tendency to inflame the jury and otherwise prejudice the defendant outweighed their probative value.
The pictures in this case show the victim's body at the scene of the crime, lying on a bed, a strip of towel wrapped around his neck, his hands tied with a shoe string, his feet bound with another strip of towel, and pieces of a broken Southern Comfort bottle near his left arm. The color photographs show that the victim was strangled, bound and gagged and stabbed in the neck. The photographs do tend to rebut the defensive contention that the defendant was so intoxicated that he did not have the specific intent to kill or inflict great bodily harm. The photographs are not so outrageous as to necessitate a new trial.
This assignment lacks merit.
For the foregoing reasons, the conviction and sentence are affirmed.