Ray JONES, Jr., Petitioner–Appellant,

v.

**Robert H. BUTLER, Sr., Warden, Louisiana State Penitentiary, Respondent–Appellee.**

No. 85–4846.

United States Court of Appeals, Fifth Circuit.

Feb. 17, 1988.

Rehearing and Rehearing En Banc Denied March 25, 1988.

David R. Rhein, Louisville, Ky. (court appointed), for petitioner–appellant.

A.M. Stroud, III, Asst. Dist. Atty., Catherine Estopinal, Randall K. Colvin, Asst. Dist. Atty., Paul Carmouche, Dist. Atty., Shreveport, La., for respondent-appellee.

Before TIMBERS,[*] KING, and HIGGINBOTHAM, Circuit Judges.

PER CURIAM:

■ This appeal from a judgment entered September 10, 1985 in the Western District of Louisiana, Tom Stagg, *Chief Judge*, denying a State prisoner's petition for a writ of habeas corpus presents the question whether he was denied effective assistance of counsel because of his counsel's failure to call two psychiatrists at his first degree murder trial. We hold he was not denied effective assistance of counsel. We affirm.

When the case of Ray Jones, Jr. came before this Court the first time, we remanded the case to the District Court for an evidentiary hearing to determine whether Jones' counsel's failure to call two psychiatrists as witnesses so undermined Jones' insanity defense as to fall below the *Strickland* standard of effective assistance. After holding the hearing, the District Court denied Jones' petition. Having reviewed counsel's account of his trial strategy as testified to by him at the evidentiary hearing, we agree that Jones' defense did not fall below the *Strickland* standard.

### Procedural Background

Jones is serving a life sentence without probation for the murder of his two month old son. The Louisiana Supreme Court's decision affirming the verdict against Jones is reported at *State v. Jones*, 386 So.2d 1363 (La.1980). Jones then pursued habeas corpus relief through the State channels. *See State v. Maggio*, 429 So.2d 151 (La. 1983) (writ denied). Following exhaustion of State remedies, Jones commenced the instant action. At the District Court level, Jones alleged that he was denied effective assistance of counsel and that he was convicted on insufficient evidence. The District Court denied relief without a hearing,

relying on a federal magistrate's report and recommendation.

■ The magistrate erroneously concluded that the State habeas finding should be afforded a presumption of correctness. The State court, however, did not hold an evidentiary hearing. State court findings are entitled to a presumption of correctness only if a hearing has been held. *See Armstead v. Maggio*, 720 F.2d 894, 896 (5th Cir.1983). Of course, Jones was entitled to that evidentiary hearing only if he could allege facts which, if proved, would entitle him to relief. *Taylor v. Maggio*, 727 F.2d 341, 347 (5th Cir.1984).

Jones thus appealed the District Court's denial of relief to this Court for the first time. We held that Jones' allegations of ineffective assistance of counsel could not be satisfactorily decided on the basis of the record alone. Accordingly, we remanded Jones' case to the District Court to hold an evidentiary hearing on his claim of ineffective assistance.[1]

After the evidentiary hearing, the District Court determined that trial counsel had a reasonable explanation for not calling at the guilt phase of Jones' trial the two psychiatrists who composed the Sanity Commission. It also determined that there was not a "reasonable possibility" that their testimony would have caused a result different from the one reached by the jury. Accordingly, in a decision filed on September 10, 1985, the District Court again denied Jones' petition. From that judgment denying Jones' second petition, the instant appeal was taken, thus coming to us a second time.

### Factual Background

The grisly facts of this case have been reported in detail in the direct appeals. *State v. Jones*, 386 So.2d 1363 (La.1980). For purposes of this habeas appeal, we limit ourselves to the following summary.

---

[*] Of the Second Circuit by designation.

1. We dismissed Jones' other contention that there was insufficient evidence on the question of specific intent to convict him of first degree murder, holding that Jones had not alleged any facts supporting this claim. *See Jones v. Blackburn*, No. 84–4400, slip op. at 4 (5th Cir. March 19, 1985) (unpublished opinion).

Ray Jones lived with his common-law wife, Shirley Ruffin, and her 11 year old daughter and their 2 month old son, Uriel. On the morning of January 18, 1979, Jones wakened Ms. Ruffin from her sleep. Jones was nude and had shaved his head. While repeatedly chanting the word "Satan", he choked Ms. Ruffin until she fell to the floor unconscious. When she came to, she called the police. After a brief search, the police found Uriel dead in the back yard. The autopsy revealed that the infant died from a crushed skull.

On the basis of a separate police call, Jones was apprehended by the police. Found in a vacant house, Jones was still naked, was screaming and chanting, and had attacked two workers. Jones finally was subdued and restrained by the combined strength of two police officers and the two workers.

After being transported to the psychiatric ward of the LSU Medical Center, he was treated with Haldol, an anti-psychotic medication. The admitting psychiatrist testified at trial that Jones was acutely psychotic when admitted. Jones stayed at the hospital for eight days. Tests performed on Jones indicated that he had ingested phencyclidine, commonly known as PCP or "angel dust". Jones told hospital personnel that, immediately before the attacks, he had consumed PCP. He stated that, at the time of the crime, he believed his wife and son were Satan.

Upon his indictment, Jones was examined by two court-appointed psychiatrists serving as a Sanity Commission. One psychiatrist concluded that Jones was suffering from a psychosis at the time of the incident and that he probably did not know the difference between right and wrong. The second psychiatrist also concluded that Jones was showing a drug-induced psychosis, with markedly impaired judgment, and that he would not be considered to have the ability to distinguish right from wrong or to know the consequences of his acts. Neither report stated that he was suffering from a pre-existing mental defect or disease.

Jones was represented by court-appointed, experienced counsel. After discussion with his counsel, Jones pleaded not guilty and not guilty by reason of insanity. Practically speaking, however, a defense of insanity was the only defense with a chance for success, for Jones did not dispute the fact that he had killed his son.

At his State trial on the guilt phase, Jones' counsel did not call the two psychiatrists as witnesses, even though they could have testified that Jones was unable to distinguish right from wrong. Counsel in fact did not call any witnesses or present any evidence whatsoever. He limited his defense solely to cross-examination of the State's witnesses.

The trial was bifurcated. Although counsel introduced no evidence during the guilt phase of the trial relating to Jones' ingestion of the PCP, counsel did present this information during the sentencing phase. The two psychiatrists also testified at length at the sentencing phase. At the jury's vote on sentencing, three jurors voted for the death sentence, even though the State had not asked for it. The final sentence was one of life imprisonment without probation.

Jones' habeas petition alleges that counsel's failure to call the psychiatrists or introduce their reports fell below the standard of effective assistance required by *Strickland v. Washington,* 466 U.S. 668 (1984). As the Court there stated:

> "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."

466 U.S. at 687.

The *Strickland* standard gives great weight to trial counsel's judgment on strategy and approach. Tactical decisions, made on an informed and reasoned basis,

do not fall below *Strickland* standards simply because they do not succeed as planned. Rather, *Strickland* is concerned with insuring that the constitutional guarantee of plain adequacy of counsel has been met. Based on that analytical framework, we now review Jones' claim.

### A Defensible Defense

Although Jones' claim is not meritless, the combination of the original trial counsel's testimony at the evidentiary hearing and the deferential standard set by *Strickland* leads us to affirmance of the District Court's denial of Jones' petition. Since we rely so heavily on trial counsel's explanation of his trial tactics and strategy in reaching our determination, we quote extensively from his testimony at the evidentiary hearing.

Both Sanity Commission psychiatrists on the sentencing phase were of the opinion that Jones was unable to distinguish right from wrong. Jones therefore contends that his counsel's decision not to call either of them at the guilt phase precluded any chance of effectively establishing the necessary components of his insanity defense. Jones also argues that the psychiatrists' testimony would have negated any evidence by the State that Jones had the requisite specific intent at the time of the crime. Since either effect would have been sufficient to defeat the State's case against Jones, he contends that the psychiatrists' testimony would have changed the outcome of the trial. In this way, Jones contends that both prongs of the *Strickland* test have been met.

The first time this case came before us, it was unclear from the record why the psychiatrists had not been called. The subsequent evidentiary hearing on remand, however, has cleared up any uncertainty as to the effectiveness of Jones' counsel at trial. Judge Stagg conducted the hearing, at which counsel for Jones testified at length regarding his strategy and approach to presenting Jones' defense.

Counsel for Jones testified first about his legal experience. After being in private practice several years, he served as first assistant in the Caddo Parish Indigent Defender's Office, the position he held at the time of the instant trial. Counsel also served as Chief Counsel in that office. He had been licensed more than eight years at the time of Jones' trial. He testified that he had handled "hundreds" of criminal cases at the ID's office, had conducted "probably 31 or 32" criminal jury trials, and "five or six" first degree murder cases as lead counsel.

Counsel then explained his three reasons for not calling the psychiatrists as witnesses. First, counsel testified that the jury would have been negatively influenced by the doctors' testimony because they would have introduced evidence of Jones' drug use and that such evidence would have severely prejudiced Jones before the jury. Second, counsel stated that one of the psychiatrists had a poor courtroom demeanor, which led counsel to predict that the doctor would have a prejudicial effect on Jones' case. And finally, counsel stated that, because of the prosecuting attorney's proficiency at cross-examination, he did not feel that the psychiatrists would "hold up well" on the stand.

Jones characterizes this explanation of counsel's decision on strategy as, in effect, a decision that a potentially vulnerable defense was worse than no defense at all. We disagree. Instead, we accept counsel's characterization of his defense strategy rather as one that emphasized the State's lack of evidence.

Counsel had several defenses available for Jones' case: insanity, involuntary intoxication, and voluntary intoxication.[2] The

---

**2.** Although Jones entered a plea of not guilty by reason of insanity, the factual pattern clearly was more suited to one of an affirmative defense of intoxication. Under Louisiana law, insanity and intoxication are two separate defenses.

"*§ 14. Insanity.*

If the circumstances indicate that because of a mental disease or mental defect the offender was incapable of distinguishing between right and wrong with reference to the conduct in question, the offender shall be exempt from criminal responsibility.

§ 15. *Intoxication.*

defense of intoxication could succeed only if Jones could show that, because of his voluntary intoxication, he was unable to form the specific intent necessary to commit murder. Counsel's testimony that he believed there was ample evidence to demonstrate specific intent certainly is reasonable. Further, his opinion that, as a fundamental matter, the voluntary intoxication defense simply would not succeed with any jury in Louisiana, as a practical matter, is almost always true. As counsel testified at the evidentiary hearing,

"I felt like from my discussions with [a] number of witnesses, it would appear that there was more than adequate evidence that would support a jury's finding of specific intent on his part.... [I]f it becomes a jury question as to whether or not [an intoxicated individual] had specific intent at a certain time, I believe that that decision would always be made adversely by a Caddo Parish jury and probably by any jury in north Louisiana."

Transcript at 31, 37.

Thus, in view of the fact that the intoxication defense seemed a poor prospect of acquittal for Jones, counsel pursued the route of the insanity defense. The two elements of an insanity defense under Louisiana law are: (i) a mental disease or mental defect that (ii) causes an inability to distinguish right from wrong. Under oath, Jones' counsel testified that the reason he did not introduce the psychiatrists' testimony was that although their testimony

"would have established impaired judgment and have established [an inability to know] right from wrong, but it would not have been from the source of a mental disease or defect. It would have established clearly that his impaired judgment and his bizarre behavior was a result of voluntary intoxication, a volun-

tary [ingestion] of drugs. *It would have established one but would completely have negated the other....* [U]nless he had a pre-existing disease or defect at that time that affected him [so that he would not know right from wrong at the time of the offense], then that would not be an insanity defense.... [I]f you couldn't show pre-existing disease or defect, you have a voluntary intoxication defense and that only avails the defendant if you can show it precludes the specific intent to commit the crime ... and I felt like there was enough evidence that a jury could conclude that he [did have specific intent]. [He] remembered [the event] and was remorseful after it happened.... He did not black out." (emphasis added).

Transcript at 40, 46–47.

In other words, counsel explained that the psychiatrists' testimony could show one component of an insanity defense—impaired judgment—but only at the expense of negating the existence of the other—a mental defect. When asked at the hearing whether counsel would conduct the trial and use the same strategy again, counsel responded affirmatively, explaining that

"I think I still would.... I think I would still test the State's case on the not guilty plea and argue to the jury that he had lost his mind, that something happened to him to break him.... The thrust of my argument was to present Ray Jones as his family had presented him, prior to the incident occurring and then to present the absolutely bizarre nature of this killing and to argue that the jury didn't know what had happened, [that] they didn't know what his state of mind was, and that under those circumstances, the State hadn't met its burden ... I argued that obviously something

The fact of an intoxicated or drugged condition of the offender at the time of the commission of the crime is immaterial, except as follows:
(1) Where the production of the intoxicated or drugged condition has been involuntary, and the circumstances indicate this condition is the direct cause of the commission of the crime, the offender is exempt from criminal responsibility.

(2) Where the circumstances indicate that an intoxicated or drugged condition has precluded the presence of a specific criminal intent or of special knowledge required in a particular crime, this fact constitutes a defense to a prosecution for that crime." La.Rev.Stat.Ann. §§ 14:14 & 15 (West 1986).

had happened to his mind that caused him to shift from a caring family man to a killer."

Transcript at 36–37.

Rather than dwell on drugs as the voluntary cause of that "breakdown", counsel decided to let the jury draw its own inferences as to the cause of Jones' uncharacteristic and bizarre behavior.[3] "I felt it better to argue insanity from lack of evidence than to present evidence that was directly contrary to his defense." Transcript at 39. Although counsel's judgment call that testimony by the two psychiatrists would have been "too prejudicial" seems questionable considering the degree and amount of other gruesome evidence introduced, we cannot say that such a decision fails the *Strickland* test.[4]

As *Strickland* admonishes us, "It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and ... all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." 466 U.S. at 689.

Counsel's testimony at the evidentiary hearing certainly places his defense of Jones within the wide latitude granted counsel in devising trial strategy. Thus, it meets the first prong of the *Strickland* standard, and precludes us from reaching the second. The District Court's determination that Jones received effective assistance of counsel at his trial is affirmed.

To summarize:

(1) Petitioner was represented at his murder trial by a court-appointed, experienced counsel.

(2) Counsel's decision not to call two psychiatrists as defense witnesses strikes us as a rational, well reasoned decision.

(3) Such decision satisfies the first prong of the *Strickland* standard.

(4) The District Court correctly denied the habeas petition.

AFFIRMED.

---

3. Representative of counsel's "insanity by implication" approach is this language from his closing argument to the jury: "[The prosecutor] may argue to you that there is no evidence before you of a mental disease or defect, but it does not take a weatherman to know which way the wind blows. And it does not take a psychiatrist to know when someone has something wrong with them. All the evidence in this case shows that Ray Jones, between 8:00 and the time he was arrested, something happened to him and there was something wrong with him, something very, very wrong." Closing Argument Transcript at 20–21.

4. The earlier panel opinion cited *State v. Scott*, 344 So.2d 1002 (La.1977), for the proposition that a defendant may prevail on an insanity defense if he proves that "due to his indulgence in alcohol or drugs he suffered from a mental disease or defect which prevented him from being able to distinguish right from wrong." *Jones*, slip op. at 4. Without agreeing that *Scott* stands for this rule, we reiterate that counsel's judgment call on whether or not a jury would accept this defense, even if available, is precisely the type of strategic, tactical decision required of effective counsel.