646 So.2d 1130 (1994)
STATE of Louisiana
v.
Robert SHEPPARD.
No. 94-KH-694.
Court of Appeal of Louisiana, Fifth Circuit.
November 16, 1994.
*1131 Cesar Vazquez, Indigent Defender Bd., Parish of Jefferson, Gretna, for relator, Robert Sheppard.
John M. Mamoulides and Terry M. Boudreaux, Dist. Attorney's Office, Gretna, for respondent, State of La.
Before KLIEBERT and CANNELLA, JJ., and JOHN C. BOUTALL, J. Pro Tem.
JOHN C. BOUTALL, Judge Pro Tem.
Robert Sheppard has filed a writ application in this Court challenging the denial of his application for post-conviction relief. This is the latest in a series of appeals and applications for relief from his sentence of 99 years at hard labor under La.R.S. 14:64. This application is primarily based upon his allegation of denial of effective assistance of counsel.
In short, Sheppard had been charged with two armed robberies in Jefferson Parish. He was accused of robbing, while armed with a hand gun, two convenience stores in quick succession in the early morning hours of March 28, 1986. When a police officer attempted to apprehend Sheppard in New Orleans, following the second armed robbery, he resisted arrest, struck the policeman and shot him three times with his own gun.
The procedural calendar of events follows.
The Jefferson Parish district attorney filed a bill of information on May 9, 1986 charging Sheppard with two counts of armed robbery. At his arraignment of July 17, 1986, the defendant pled not guilty. The matter was set for trial and on October 20, 1986, defendant withdrew his former plea of not guilty and after being advised of his rights under the Boykin principles, he pled guilty to one count of armed robbery. In exchange for defendant's guilty plea, the state dismissed the second count of armed robbery.[1]
Following a pre-sentence investigation, the judge on December 18, 1986, sentenced defendant to 99 years at hard labor without benefit of parole, probation or suspension of sentence with cogent reasons for his actions.
Sheppard appealed and this Court affirmed relator's conviction and sentence. State v. Sheppard, 510 So.2d 118 (La.App. 5 Cir.1987). He raised the following assignments of error on appeal:
1. Assigned as error are any and all errors patent on the face of the record.
*1132 2. The trial court erred in sentencing the defendant to an excessive sentence.
On June 29, 1987, this Court affirmed defendant's conviction and sentence specifically holding that the sentence of 99 years given the defendant was not excessive under the circumstances of the case. See State v. Sheppard, supra.
Two and a half years later, the relator filed an application for post-conviction relief on January 16, 1990 alleging that he was denied effective assistance of counsel at trial and the sentencing and, further, that he was denied due process because the trial judge failed to consider mitigating circumstances.
The trial judge found relator's claims to be without merit and, accordingly, denied his application. Relator then filed a writ application to this Court challenging that denial. On June 13, 1990, a panel of this Court granted writs issuing the following disposition:
WRIT GRANTED.
We cannot discern from the present record whether or not the possibility of a defense of insanity, relative to relator's alleged drug-induced hallucination, was adequately made known to him prior to his entering a plea of guilty.
Accordingly, the case is remanded to the trial court and the trial judge is instructed to conduct an evidentiary hearing to determine this issue.
Pursuant to this Court's order, an evidentiary hearing was held in the district court on November 16, 1990 to determine whether or not Sheppard was informed as to a possible insanity defense prior to entering his guilty plea. Judge Grefer issued an order on December 3, 1990 holding that Sheppard was not made aware of the possibility of an insanity defense before entering a plea of guilty. The trial judge nevertheless denied relief, finding as follows: "The fact that the plea of not guilty by reason of insanity was not adequately made known to the defendant prior to his entering a plea of guilty does not affect the validity of the plea as the plea of not guilty by reason of insanity was not validly available to the defendant at the time the plea was made."
Relator thereafter applied to this Court for a writ of review, State v. Sheppard, 618 So.2d 1204 (La.App. 5 Cir.1993) making the following claims of error:
1. The trial court erred in concluding that the defense of insanity was not validly available to Sheppard.
2. Sheppard was denied the effective assistance of counsel at his plea and his guilty plea is invalid.
3. The defendant was denied the right to present evidence relative to the merits of this writ application.
This Court again affirmed defendant's conviction holding, in part:
The defense of insanity by reason of voluntary intoxication was not available to this defendant who was charged with armed robbery. Inasmuch as there is nothing in the record to indicate that the possible insanity defense could have any basis other than intoxication, if it had any valid basis at all, we hold that the first assignment of error is without merit.
State v. Sheppard, supra at pp. 1208-9.
Relator applied to the Supreme Court of Louisiana for writs of certiorari and/or review on June 9, 1993. In a per curiam issued on September 24, 1993, the Supreme Court granted writs and remanded the matter to the trial court for an evidentiary hearing
at which evidence should be allowed relating to the viability of an insanity defense at the time of defendant's guilty plea, and for reconsideration, in light of such evidence and the previous evidence adduced, of the claim of ineffective assistance of counsel. The court should also consider whether, under the circumstances of defendant's minimal representation by appointed counsel, there was a "constructive denial" of counsel from which prejudice should be presumed.[2]State v. Sheppard, 624 So.2d 1209 (La.1993).
*1133 An evidentiary hearing was held in the district court before Judge Clarence McManus on February 25, 1994, March 29, 1994 and April 19, 1994. On April 19, Judge McManus held that: (1) at the time of Sheppard's guilty plea, an insanity defense was not viable; (2) Sheppard received effective assistance of counsel; and (3) there was not constructive denial of counsel from which prejudice should be presumed. It is from this ruling by the district court that relator now seeks review.

CLAIM ONE
Defendant alleges that at the time of the offense he suffered a mental defect caused by his use of the drug PCP and was therefor incapable of distinguishing right from wrong. He asserts that the defense of insanity by reason of voluntary intoxication was available to him at the time of his plea, and because he was not made aware of this defense, his plea was not knowingly and intelligently made. It is relator's contention, then, that the trial court erred in holding that an insanity defense was not viable as to Sheppard at the time of the guilty plea.
We have discussed this issue and others in State v. Sheppard, 618 So.2d 1204, supra. We believe our discussions and conclusions therein expressed are correct and we reiterate them. In this case we now have before us additional facts ascertained by the remand.
Under LSA-R.S. 14:15 the fact of an intoxicated or drugged condition at the time of an offense is immaterial except as follows:
(1) Where the production of the intoxicated or drugged condition has been involuntary, and the circumstances indicate this condition is the direct cause of the commission of the crime, the offender is exempt from criminal responsibility.
(2) Where the circumstances indicate that an intoxicated or drugged condition has precluded the presence of a specific criminal intent or of special knowledge required in a particular crime, this fact constitutes a defense to a prosecution for that crime.
It is well settled that voluntary intoxication can only be considered as a defense where specific intent is an essential element of the crime. State v. Boleyn, 328 So.2d 95 (La.1976). Armed robbery is a general intent crime, and thus the defense of intoxication was not available in relator's case. Insanity, however, may be employed as a defense to any category of crime.
LSA-R.S. 14:14 provides:
If the circumstances indicate that because of a mental disease or mental defect the offender was incapable of distinguishing between right and wrong with reference to the conduct in question, the offender shall be exempt from criminal responsibility.
In State v. Dean, 487 So.2d 709 (La. App. 5 Cir.1986), writ denied, 495 So.2d 300 (La.1986), this Court suggested that legal insanity can, in some circumstances, be produced by voluntary intoxication. See also State v. Scott, 344 So.2d 1002 (La.1977); State v. Pier, 530 So.2d 1253 (La.App. 2 Cir.1988), writ denied, 536 So.2d 1234 (La. 1989); and State v. Sanders, 567 So.2d 177 (La.App. 4 Cir.1990).
Under the reasoning in Dean, relator might arguably have employed an insanity defense, provided he could show that he was actually drugged at the time of the offense and that the drugs he took caused him to become legally insane. The ultimate question before the district court, then, was whether relator was in fact under the influence of PCP at the time of the offense. If Sheppard was not on PCP when he committed the armed robberies, an insanity defense was not viable at the time relator entered his guilty plea.
Relator committed two armed robberies on Metairie Road shortly before 2:00 a.m. on March 26, 1986, fled to Orleans Parish where he shot and wounded a Jefferson Parish Sheriff's Deputy, and was arrested by New Orleans Police shortly thereafter.
Relator testified at the evidentiary hearing that he smoked PCP in a marijuana cigarette at some point during the day on March 25, but he did not remember what time or where, nor did he remember from whom he *1134 had obtained the PCP. Relator also testified that he had used PCP regularly for over a year prior to the armed robberies, but had never sought drug counseling or medical treatment.
Relator was employed during the year preceding the robberies as a delivery driver for a local florist. He testified that he used PCP on a regular basis while on the job, and although he believed his employer knew he was using drugs, relator was never fired.
Relator testified that he did not remember committing the armed robberies and does not recall the car he was driving that morning, nor does he remember shooting a sheriff's deputy. Relator did not tell police officers upon his arrest that he was under the influence of PCP. He also failed to inform his attorneys of his drug use. Relator did, however, disclose this information to his probation officer in the course of a pre-sentence investigation.
Relator testified that his frequent use of PCP made him drowsy on the job and unable to function well. Later in his testimony, relator stated that the PCP made him "want to hurt somebody." At one point relator testified that he did not remember whether he had used PCP prior to committing the armed robberies.
Three law enforcement officers testified as state's witnesses at the evidentiary hearing. Deputy Fred Falgout, a 30-year veteran of the Jefferson Parish Sheriff's Office, was the officer who attempted to apprehend relator shortly after the armed robberies occurred. Falgout testified that he was on patrol in a marked police car on the morning of March 26, 1986 when he spotted relator's car. Because relator matched the description of the armed robbery suspect broadcast over police radio, Falgout followed him.
Falgout testified that Sheppard stayed within the speed limit, observing all traffic signs and properly using his turn signal. Finally, of his own accord, relator stopped his car on Joliet Street in New Orleans. Relator then approached Falgout's police unit on foot. Falgout testified that relator was well-spoken, clean cut, and cordial. He calmly complied with Falgout's order to return to his car and place his hands on the trunk. It was not until officers at the armed robbery scene instructed Falgout over the police radio to arrest Sheppard that relator attacked Falgout. Relator grabbed Falgout's gun and fired, hitting Falgout three times.
Falgout testified that in the past he has encountered a person under the influence of PCP, and Falgout did not believe that relator was on drugs or alcohol on the morning of March 26.
Pascal Saladino, a New Orleans Police Department Homicide Detective (retired at the time of the hearing), testified that he took a statement from Sheppard upon his arrest in Orleans Parish. The interview began at 4:43 a.m. on March 26, about three hours after the robberies occurred. Saladino testified that relator was cooperative, knew and understood what was happening, and was not hostile or aggressive. Relator did not display any behavior that gave Saladino cause to believe that Sheppard was on drugs.
Captain Vincent Lamia of the Jefferson Parish Sheriff's Office testified that he took two statements from relator after Sheppard was handed over to Jefferson Parish authorities. The first started at 6:04 a.m. on March 26, 1986, about four hours after the armed robberies.
A 21-year veteran of the Sheriff's Department, Capt. Lamia testified that he had gone through special training programs in dealing with subjects under the influence of PCP. Capt. Lamia testified that in his experience, people under the influence of PCP are typically very combative and aggressive, exhibit extraordinary strength and act erratically. He also stated that PCP can linger in the body for as long as a week after use. Relator exhibited none of the traits of PCP use. In fact, Lamia testified that relator was alert and aware of his surroundings. He was articulate, calm, and even showed remorse over what had happened.
In addition to the aforementioned testimony, the district court considered physical evidence, which included transcripts of the statements relator gave to police and a tape recording of the statements taken by Capt. *1135 Lamia. It appears the evidence adduced at the evidentiary hearing was sufficient to allow the district court to properly consider the "viability of an insanity defense at the time of defendant's guilty plea", as the Supreme Court directed.
The evidence clearly shows that an insanity defense was not viable as to relator at the time of his guilty plea. Relator's own testimony regarding his use of the drug PCP is evasive and contradictory. He could not say when or where he used the drug on the day leading up to the robberies. In fact, he seemed uncertain as to whether he used the drug at all that day. It is of particular note that relator did not inform the arresting officers or his attorneys of his drug use.
On the other hand, the testimony of the three experienced police officersall of whom encountered relator within a few hours of the robberieswas consistent. Each officer testified that relator did not appear to be intoxicated or under the influence of drugs. Relator's behavior, according to these officers, was not consistent with that of a person using PCP.
For the foregoing reasons, it appears that the district court was correct in finding that the relator had no viable insanity defense at the time of his guilty plea.

CLAIMS TWO AND THREE
Additionally, the trial court found "that the defendant did receive effective assistance of counsel. Likewise, there was no `constitutional denial' of counsel from which prejudice should be presumed."
Relator contends that because his appointed attorneys did not advise him of a possible insanity defense, he was deprived of effective assistance of counsel. Relator further claims that because his attorney failed to discuss with him any of the facts of his offense before he entered his plea, there was a constructive denial of counsel from which prejudice should be presumed.
A defendant is entitled to effective assistance of counsel under the Sixth Amendment of the United States Constitution and Article I, Section 13 of the Louisiana Constitution. When a defendant seeks reversal of a conviction based on ineffective assistance of counsel he must satisfy both parts of the two-prong test set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), rehearing denied 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984). First defendant must show that his attorney's performance was deficient. To do this he must show that counsel "committed errors so serious that he or she was not functioning as the `counsel' guaranteed a defendant by the Sixth Amendment." Strickland, supra 466 U.S. at 687, 104 S.Ct. at 2064. The key question must be whether counsel's performance was reasonable considering all the circumstances.
Secondly, defendant must show that the deficiency was so great as to prejudice the defense. This requires a showing that counsel's errors were "so serious as to deprive the defendant of a fair trial, one with a reliable result." Id. There is no precise definition of effective assistance of counsel, so each case must be judged on its own facts.
In State v. Washington, 491 So.2d 1337 (La.1986), the Louisiana Supreme Court held that the two-part test of Strickland v. Washington, supra, applies to challenges to guilty pleas based on ineffective assistance of counsel. In State v. Washington, supra at pp. 1338-1339, the Louisiana Supreme Court stated:
In the context of guilty pleas, the first half of the Strickland v. Washington test is nothing more than a restatement of the standard of attorney competence already set forth in Tollett v. Henderson, [411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973)], supra, and McMann v. Richardson, [397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763], supra. The second, or `prejudice' requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the `prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. [Several Courts of Appeals have adopted this general approach. See Thomas v. *1136 Lockhart, 738 F.2d 304, 307 (CA8 1984); accord, United States v. Gavilan, 761 F.2d 226, 228 (CA5 1985); Beans v. Black, 757 F.2d 933, 936-937 (CA8 1985); Mitchell v. Scully, 746 F.2d 951, 957 (CA2 1984); Evans v. Meyer, 742 F.2d 371, 374-375 (CA7 1984) (Footnote in original)]. [Hill v. Lockhart, 474 U.S. 52, at 56-61] 106 S.Ct. [366] at 369-71 [88 L.Ed.2d 203 (1985)] (emphasis added).
During the evidentiary hearing that began on February 25, 1994, the district judge took judicial notice of the testimony given by attorneys William Landry and Richard Thompson at the evidentiary hearing held in this matter on November 16, 1990. Mr. William Landry testified that on October 20, 1986, while employed by the I.D.B., he was called by the court to handle defendant's plea. Mr. Landry was told by the District Attorney that defendant wanted to enter a guilty plea, with the understanding that he would be given a pre-sentence investigation. Without knowing the facts of the case or any of the circumstances of the crime, Mr. Landry read the Boykin form to defendant and asked him if he had any questions. This process took about fifteen minutes.
Mr. Landry went to court with the assumption that a plea bargain had already been entered into and he was merely there to execute the plea. He testified that had defendant told him that he was high on PCP at the time of the crime he would have asked for a sanity commission and would have advised him that he had a possible defense of intoxication due to drugs; however, defendant did not give him any of that information.
Richard Thompson was the second witness called at the November 16, 1990 hearing. He testified that on September 18, 1986, he was appointed by the I.D.B. to represent Mr. Sheppard. He did not make any attempt to see relator, who was confined at Orleans Parish Prison, because he knew that when relator appeared on October 20 for trial, the matter would be continued because of the shortness of time between his appointment date and the trial date. When Mr. Thompson arrived at court on October 20, he learned that Sheppard had shot Fred Falgout, one of his personal friends, and therefore requested to be removed from the case. At that time, Mr. Thompson simply advised defendant that he had to withdraw. Mr. Thompson did not discuss the facts of the case with relator, nor did he advise him of any possible defenses.
When the matter came on for sentencing, Mr. Thompson agreed to represent Sheppard with the assumption that some sort of sentence had been agreed to as part of the plea bargain. Mr. Thompson was surprised when the judge sentenced relator to 99 years, and at that point Mr. Thompson filed a notice of appeal and a notice to withdraw.
The failure of relator's attorneys to advise him of a possible intoxication/insanity defense does not constitute ineffective assistance of counsel, since relator made no mention to them that he had been under the influence of drugs at the time of the armed robberies. Furthermore, as stated above, the evidence shows that relator was not in fact on PCP at the time of the offenses charged.
Indeed, considering relator's evasive and unreliable testimony, it can be concluded that his story of PCP use was a fabrication solely for the purpose of achieving sentence reduction. He does not even mention PCP in his statements to the police after his arrest.
Relator contends that the failure of appointed counsel to investigate his case deprived him of the opportunity to make a knowing and intelligent plea, relying on Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), Bradbury v. Wainwright, 658 F.2d 1083 (5th Cir.1981).
A consideration of the record and the evidence leads to the conclusion that relator received only minimal assistance from the appointed attorneys. Nevertheless, the plea of guilty was entered after explanation of his rights under Boykin and relator was asked if he had any questions and if he understood what he was doing. He signified that he did.
In our prior decision in this case, we noted that "the record discloses that, prior to the plea, the defendant was duly and properly advised by the defense counsel and the trial *1137 judge of all of the constitutional rights he did have available to him." State v. Sheppard, supra, 618 So.2d at 1209.
This is not the type of situation that occurred in State v. Knight, 611 So.2d 1381 (La.1993). The defendant was not pressed to trial with an unprepared attorney as in Knight. In our case, the first attorney testified that a continuance was available to him if he requested one. The defendant told neither attorney that he had any defenses and apparently had decided on his own to change his plea from not guilty to guilty of one count of armed robbery. He took a chance on what the sentence would be after a pre-sentence investigation and, unfortunately for him, he received the maximum. We have affirmed the sentence on appeal in the first State v. Sheppard case. We did not then, nor do we now, conclude that the maximum sentence was excessive under the circumstances.
The defendant had a competent, experienced attorney standing by who explained his Boykin rights and who was available to answer questions and file whatever motions were necessary if defendant had expressed any doubts about his plea or his defenses. It is simply speculation to say that he might have negotiated a better plea bargain.
Accordingly, we affirm the rulings of the trial judge and deny the relief sought.
WRIT OF REVIEW GRANTED; APPLICATION FOR SUPERVISORY RELIEF DENIED.
NOTES
[1] He was charged and sentenced in Orleans Parish for the attack on the policeman.
[2] As will be discussed below, it appears that the district court substantially complied with the Supreme Court's directive.