328 So.2d 95 (1976)
STATE of Louisiana
v.
Michael Wayne BOLEYN.
No. 57036.
Supreme Court of Louisiana.
February 23, 1976.
Rehearing Denied March 26, 1976.
*96 William H. Ledbetter, Jr., Polk, Foote, Randolph, Percy & Ledbetter, Alexandria, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Edwin O. Ware, Dist. Atty., Alfred B. Shapiro, Asst. Dist. Atty., for plaintiff-appellee.
CALOGERO, Justice.
Defendant Michael Wayne Boleyn was charged by bill of information with simple escape in violation of La.R.S. 14:110.[1] After trial by jury on August 11 and 12, 1975, defendant was found guilty as charged. He was thereafter sentenced to serve four years at hard labor, said sentence to run consecutively with any other sentence the accused may be required to serve. On appeal, defendant relies on eight assignments of error for reversal of his conviction and sentence. Because we find reversible error in certain of the first four assignments of error, we do not find it necessary to discuss assignments of error five through eight.
On February 19, 1975, at approximately 2:30 p.m., defendant Michael Wayne Boleyn and another, A. C. Manuel, were discovered *97 missing from the Camp Beauregard Work Release Center, located near Pineville, Louisiana. The Camp Beauregard Work Release Center is a unit of the Louisiana Department of Corrections which houses prisoners who are participating in the work release program as well as prisoners classified as maintenance inmates. Maintenance inmates are not participants in the work release program, but rather live and work at Camp Beauregard and do maintenance work for the Department of Corrections as part of a cooperative program with the National Guard. Defendant and A. C. Manuel were maintenance inmates. At approximately 12:30 a. m. on February 20, 1975, less than twelve hours after they were discovered missing, defendant and A. C. Manuel were stoped by state troopers for a traffic violation while headed westbound on I-10 approximately two and one-half miles east of Lake Charles, Louisiana. Defendant was driving an automobile, which was owned by his brother.
At the trial defendant sought to present to the jury, testimony relating to his state of consciousness at the time of the purported escape, evidence of the alleged perpetration of a sodomous rape upon him the night before the escape, and evidence of his consumption of alcohol and drugs immediately prior to the escape. The trial judge heard such testimony out of the presence of the jury and ruled all such evidence inadmissible, on several grounds.
First, he ruled that the foundation laid by defendant was insufficient to permit evidence to be presented before the jury as to a defense of necessity of escape. This Court has previously held that evidence of the conditions at a prison at the time of an escape is not relevant to the crime charged and is therefore properly excluded. State v. Woodfox, 263 La. 935, 269 So.2d 820 (1972). See La.R.S. 15:435, 15:441. However, there is a recognized but extremely limited defense of necessity of escape. People v. Lovercamp, 43 Cal.App.3d 823, 118 Cal.Rptr. 110 (1974); People v. Harmon, 53 Mich.App. 482, 220 N.W.2d 212 (1974). In People v. Lovercamp, supra, a California court held that this defense is available only in the following situation:
"(1) The prisoner is faced with a specific threat of death, forcible sexual attack or substantial bodily injury in the immediate future;
(2) There is no time for a complaint to the authorities or there exists a history of futile complaints which make any result from such complaints illusory;
(3) There is no time or opportunity to resort to the courts;
(4) There is no evidence of force or violence used towards prison personnel or other `innocent' persons in the escape; and
(5) The prisoner immediately reports to the proper authorities when he has attained a position of safety from the immediate threat."
Before submission of this defense to the jury, an accused must lay an appropriate foundation. Although in the instant case defendant and another inmate testified out of the presence of the jury that defendant had been homosexually raped the night before the escape, there was no testimony to support the other prerequisites.[2] The *98 offer of proof in this case was therefore insufficient, and the trial judge was correct in excluding evidence of the alleged sodomous rape as immaterial. La.R.S. 15:435; 15:441.
The trial judge also ruled that evidence of an intoxicated or drugged condition of defendant at the time of the escape was inadmissible because the foundation laid by defendant indicated that when consuming the beer and the pain pills defendant had acted voluntarily. The offer of proof relative to defendant's state of consciousness included defendant's testimony that the morning after he was allegedly raped, i.e., the day of the escape, he took some "toanol" (sic)[3] pills and also consumed a substantial quantity of beer; that at about 2:00 p.m., not feeling well, he went and sat in a truck;[4] that the next thing he remembers was finding himself in the back of his brother's Toyota with A. C. Manuel at the wheel; and that because A. C. Manuel was drunk defendant took over the driving. Defendant's story was partially supported by the testimony of James Harris, another inmate at the Camp Beauregard Work Release Center, who stated that on the morning after the alleged rape he saw defendant drinking beer and that when he saw defendant again, somewhat later, he appeared to be drunk and groggy. Harris further testified that at about 2:30 or 3:00 p.m. he saw defendant slumped over on the seat on the passenger side of a truck and that he noticed A. C. Manuel using a pay telephone, although he did not hear any of the conversation. Despite defense counsel's argument that the proffered evidence tended to show or was relevant to indicate that defendant, in an unconscious condition, was moved by another party and did not walk or drive himself away, the trial judge ruled that such evidence was not admissible.
Under La.R.S. 14:15, evidence of an intoxicated or drugged condition of an accused at the time of the alleged commission of the offense is immaterial and, therefore, inadmissible, except as follows:
(1) Where the production of the intoxicated or drugged condition has been involuntary, and the circumstances indicate this condition is the direct cause of the commission of the crime, the offender is exempt from criminal responsibility.
(2) Where the circumstances indicate that an intoxicated or drugged condition has precluded the presence of a specific criminal intent or of special knowledge required in a particular crime, this fact constitutes a defense to a prosecution for that crime."
Thus voluntary intoxication can be considered as a defense only in cases where specific intent is a necessary element of the crime. In defining the crime of escape, La.R.S. 14:110 uses the word "intentional" without the qualifying provision "specific," thus indicating that only general criminal intent is required. La.R.S. 14:11. See State v. Epperson, 289 So.2d 495 (La.1974). General criminal intent is present when "the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act." La.R.S. 14:10.
*99 In cases where the accused is voluntarily intoxicated at the time of the commission of the offense, the necessary criminal intent is generally found in the accused's intention to become intoxicated, i.e., the accused is held to have intended, in law, all the consequences of his intoxicated condition. Annotation, Modern Status of the Rules as to Voluntary Intoxication as Defense to Criminal Charges, 8 A.L.R.3d 1236 (1966). Thus in a situation where an inmate voluntarily becomes intoxicated or drugged and while in that condition walks out of an incarcerated area or gets into an automobile and drives himself away, voluntary intoxication would not be a defense. The main thrust of defense counsel's argument in the case before us, however, is that defendant did not by his own physical or conscious actions depart from the lawful custody of the Department of Corrections, but rather that, while in an unconscious condition and without his knowledge or consent, he was removed from the prison area by another inmate.
The allegation that defendant was removed or "carried away" by another prisoner and did not depart by his own physical actions adds a new dimension to a request for introduction of evidence in the presence of the jury relative to the state of consciousness of defendant, and, as it relates thereto, to his alleged intoxicated and drugged condition. La.R.S. 15:444 state that "[i]f a statute had made it a crime to do a particular act, no further proof of intent is required than that accused voluntarily did the act . . .." (Emphasis added). Evidence that defendant was unconscious at the time of the escape and evidence tending to show that he was removed by another party while in that state and without his knowledge or consent would indicate to the jury that defendant did not voluntarily escape, thus negating even general criminal intent.
Under the circumstances of this case, evidence of the state of consciousness of defendant and of his intoxicated or drugged condition should have been submitted to the jury.[5] The impact of the introduction of such evidence should be modified by careful instruction to the jury that voluntary intoxication alone is not an appropriate defense to the charged crime. But defendant's asserted defense of being removed by another party while he was unconscious and the evidence presented in support thereof is for the jury to evaluate. It was therefore error for the trial court to exclude the proffered evidence in this respect.
For the reasons assigned, the conviction and sentence are reversed and the case is remanded for a new trial.
SANDERS, C.J., and DENNIS, J., dissent.
MARCUS, J., dissents and assigns reasons.
MARCUS, Justice (dissenting).
In my view, a person who voluntarily becomes intoxicated or drugged is responsible for all criminal consequences unless the crime involves specific intent. La.R.S. 14:15. Under the circumstances of the instant case, defendant's criminal intent is found in the accused's intention to become intoxicated or drugged, i. e., the accused is held to have intended, in law, all the consequences of his intoxicated or drugged condition. Therefore, the criminal act of escape is a consequence of defendant's voluntary intoxicated or drugged condition. I respectfully dissent.
NOTES
[1] "A.Simple escape is:

(1) The intentional departure of a person, while imprisoned, whether before or after sentence, under circumstances wherein human life is not endangered, from lawful custody of any officer of the Department of Corrections or any law enforcement officer or from any place where he is lawfully detained by any law enforcement officer; or
(2) The failure of a criminal serving a sentence and participating in a work release program authorized by law to report to or return from his planned employment or other activity under said program; or
(3) The failure of a person who has been granted a furlough under the provisions of R.S. 15:833 and fails to return to his place of confinement at the appointed time."
[2] The proffered evidence relative to the sodomous rape was the testimony of defendant that he was raped by an inmate who stuck a knife at his throat, as well as the testimony of James Harris, also an inmate at the Camp Beauregard Work Release Center, which supported defendant's theory. James Harris, who had a bed in the same dormitory as defendant testified that he saw a man put a knife to defendant's neck or head; saw defendant remove his shorts and lay down on the bed with that man; and noticed that they remained there for 15 to 25 minutes. Shortly thereafter James Harris went to the bathroom and saw defendant crying and attempting to clean himself. Defendant indicated that he did not go to the doctor the next day for fear of reprisals by the inmate who had raped him or his friends. The alleged escape did not take place until twelve or fifteen hours later.
[3] Defendant testified that these pills were given to him by the man who raped him in order to ease his pain. In brief to this Court, the state indicates that these were tuinal capsules, "a frequently abused and quite popular central nervous system depressant which is described (sic) by physicians as sleepingpills."
[4] It was not unusual for defendant to be inside a truck. According to testimony by witnesses for the state, the normal procedure at the Camp Beauregard Work Release Center was for maintenance inmates to catch "carpool" rides in trucks back and forth from the inmate center to areas of Camp Beauregard where they were currently assigned.
[5] As indicated earlier in this opinion, evidence of the alleged sodomous rape of defendant is, however, inadmissible, and defense witnesses upon retrial will be required to testify relative to defendant's state of consciousness without reference to the alleged reason for defendant's taking the pills and consuming alcoholic beverages.