669 So.2d 715 (1996)
STATE of Louisiana, Appellee,
v.
Shannon CASSELS, Appellant.
STATE of Louisiana, Appellee,
v.
Michael McDANIEL, Appellant.
Nos. 27227-KA, 27258-KA.
Court of Appeal of Louisiana, Second Circuit.
February 28, 1996.
*716 Donnie Ellerman, Winnsboro, for Appellant Shannon Cassels.
Rick Lane Candler, Ruston, for Appellant Michael McDaniel.
Richard Ieyoub, Attorney General, William R. Coenen, Jr., District Attorney, Johnny R. Boothe, Asst. District Attorney, for Appellee.
Before STEWART, J., and CLARK and SAVOIE, JJ. Pro Tem.
CLARK, Judge Pro Tem.
The facts have been adequately set forth in the original opinion. In that opinion, we remanded to the trial court for a hearing to determine whether each defendant's guilty plea was voluntarily and intelligently entered without any coercion and after each defendant was counseled or informed of the mandatory nature of the sentence for a conviction of second degree murder. After conducting such a hearing, the trial court found both pleas were voluntarily and intelligently entered. We conclude that the trial court's decision was correct and affirm both convictions and sentences for the following reasons.
As we discussed in our original opinion, a defendant's decision to plead guilty must be his free and voluntary choice. State v. Garth, 622 So.2d 1189 (La.App. 2d Cir. 1993); State v. Smith, 513 So.2d 544 (La.App. 2d Cir.1987). In addition to the defendant being informed of and waiving his constitutional rights of trial by jury and confrontation and the right against compulsory self-incrimination as set forth in Boykin v. Alabama, *717 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), this court has also recognized that the defendant should be apprised of the possible ranges of sentences for the offense to which he is pleading guilty. State v. Garth, supra; State v. Smith, supra. The requirement of such advice includes the defendant's understanding of both the maximum and minimum sentence he faces by pleading guilty and any other sentencing consequences resulting from his plea. State ex rel. LaFleur v. Donnelly, 416 So.2d 82 (La. 1982); State v. Garth, supra; State v. Smith, supra.
This court has also considered whether it is only the trial court's explanation of the possible ranges of sentences that can satisfy this important factor in determining whether the plea was voluntarily and intelligently entered. In State v. Whitaker, 543 So.2d 1073 (La.App. 2d Cir.1989), the defendant contended that the trial court accepted his plea to aggravated battery without informing him of the maximum penalty for such an offense, thereby preventing his plea from being a voluntary and intelligent one. However, we noted that the record showed the defendant's counsel had discussed the penalty with him, and the defendant had also indicated to the court that his attorney had done so. This court concluded that the trial judge is not required to explicitly inform the defendant of the possible penalties as long as there was an affirmative showing of record that the defendant knew of the possible penalties. Id. at 1076.
Further, in State v. Mitchell, 561 So.2d 819 (La.App. 2d Cir.1990), this court noted there was no affirmative showing in the record that the trial court informed the defendant of the range of penalties for the offense to which he pleaded and recognized such as error patent. However, we did not categorically vacate the plea because of our conclusion that the due process requirement for a voluntary and intelligent plea may be fulfilled either by the trial court or by explanation from defense counsel that the defendant was so informed prior to the plea. This court instead conditionally vacated the conviction and sentence and remanded to the trial court for a hearing to determine if the defendant was so counseled by his attorney. Id. at 819.
Finally, in State v. Garth, supra, the trial court informed the defendant at the time of his guilty plea of the maximum sentence he could receive, but did not mention what the minimum sentence was. This court noted that there was nothing in the record to show that the defendant's attorney had informed him of the minimum sentence he could receive if he pled guilty. However, as in State v. Mitchell, supra, we conditionally vacated the conviction and sentence and remanded for a hearing to determine whether the defendant entered an intelligent and voluntary plea after being counseled or informed of the possible sentence exposure. Id. at 1191.
Having set forth the applicable law in this area, we must now consider the facts of the instant case in light of these pronouncements. At the hearing, each of the defendants' respective attorneys testified as to the events surrounding the entering of the guilty pleas. McDaniel's attorney, Carey J. Ellis, III, testified that he talked with McDaniel on more than one occasion about the consequences of his plea. Ellis was then asked if he had advised McDaniel that the mandatory sentence for second degree murder was life imprisonment without benefit of parole, probation, or suspension of sentence, and Ellis replied that he had done so. Ellis testified that he had also discussed with McDaniel the possible penalty for first degree murder, the original charge, but denied making threats or promises to induce him to plead guilty. Finally, when asked if he was satisfied that McDaniel understood at all times that the minimum sentence he would receive was life imprisonment without benefit of parole, probation, or suspension of sentence, Ellis responded, "I think so, yes."
Cassels' attorney, James M. Stephens, testified next. Stephens indicated that he had discussed at length with Cassels the penalties for both first and second degree murder. Stephens stated he also had explained to Cassels that there was the possibility for a Governor's pardon or clemency even though the penalty for second degree murder was mandatory, but did not promise Cassels he would be eligible for either of these benefits. *718 Stephens denied making any threats or promises to induce Cassels' plea. When asked if he believed Cassels was aware at the time of his guilty plea of the mandatory nature of the sentence, Stephens responded in the affirmative. Finally, Stephens emphasized that Cassels' family was insistent in his getting the charge reduced from first degree murder.
Both defendants also testified at the hearing. McDaniel, who quit school in the eighth grade, admitted that he was informed of the mandatory nature of the penalty, but claimed he did not understand what this term meant. McDaniel also contended that Ellis indicated it was possible he would only serve ten to twenty years, and never explained the inapplicability of parole or probation.
Cassels, who had a seventh grade education, also stated that he did not understand the mandatory nature of the life sentence. When asked to define "mandatory," Cassels stated "the only way." On cross-examination, he had difficulty in recalling events from his guilty plea proceeding.
Considering the testimony from the hearing and from the prior proceedings, we find that both defendants' guilty pleas were voluntarily and intelligently entered. At the guilty plea proceedings, each defendant indicated that his respective attorney had discussed the case in detail with him. Both attorneys testified to such advisement at the hearing on remand, each stating that he had discussed with and explained to his respective client the penalties for first and second degree murder. Ellis and Stephens also stated that they had informed their clients of the mandatory nature of the penalty resulting from a guilty plea to second degree murder. Ellis testified that he was satisfied that McDaniel understood all of the terms associated with the sentence for second degree murder. Stephens testified that he expressly explained to Cassels the "without benefit" language of the penalty. We conclude that there is a sufficient record showing of the required advisement. State v. Mitchell, supra; State v. Whitaker, supra.
We recognize that each defendant's testimony at the hearing contradicted that of his attorney. However, it is the function of the judge or jury to assess credibility and resolve any conflicting testimony. State v. Walker, 26,026 (La.App. 2d Cir. 05/04/94), 637 So.2d 583, writ denied, 94-1369 (La. 09/30/94), 642 So.2d 868; State v. Jackson, 629 So.2d 1374 (La.App. 2d Cir.1993), writ denied, 94-0201 (La. 05/06/94), 637 So.2d 1046. Where the trier of fact has made a rational determination, an appellate court should not disturb it. State v. Walker, supra; State v. Jackson, supra.
Absent the self-serving statements of each defendant at the hearing on remand, there is little record support for their claims. At sentencing, each attempted to withdraw his guilty plea for reasons other than lack of knowledge as to the mandatory nature of the sentence. There was no indication from either defendant that he was surprised by the sentence imposed.
The trial judge's assessment of the credibility of the defendants' attorneys should not be disturbed. We are satisfied that each defendant voluntarily and intelligently pled guilty to second degree murder, thereby avoiding a possible conviction of first degree murder and the death penalty, after having been advised by their respective attorneys of the consequences of such a plea. The convictions and sentences of both defendants are AFFIRMED.[1]
NOTES
[1] In the 1987 decision of this court, State v. Smith, supra, Judge Charles R. Lindsay referred to the plea colloquy of the trial judge, the Honorable Chet Traylor, asking the defendant if he understood that the "maximum sentence which the Court might impose will be imprisonment for life...." (Emphasis added.) To this statement, Judge Lindsay aptly responded:

Had the trial judge properly advised the defendant of the mandatory sentencing provisions, of the statutes under which he was pleading, there could have been no misunderstanding by the defendant of the consequences of his guilty pleas when they were tendered to the trial court. Id. at 549.
Now, nine years later, we observe that had the same trial judge followed the law and properly advised these defendants of the mandatory sentence for a guilty plea to second degree murder, there would have been no misunderstanding of the consequences. Likewise, there would have been no need to correct his error by requiring an evidentiary hearing to determine whether each defendant understood the direct result of entering his plea.