733 So.2d 49 (1999)
STATE of Louisiana, Appellee,
v.
Brian BUSH, Appellant.
No. 31,710-KA.
Court of Appeal of Louisiana, Second Circuit.
February 24, 1999.
*51 Stephen Glassell, Shreveport, Ellender & Ellender By: Amy Clark Ellender, Mer Rouge, Counsel for Appellant.
Richard Ieyoub, Attorney General, Paul Carmouche District Attorney, Hugo A. Holland, Assistant District Attorney, Counsel for Appellee.
Before BROWN, CARAWAY and DREW, JJ.
CARAWAY, J.
A jury convicted Brian Bush of simple escape, a violation of La. R.S. 14:110. Subsequently, Bush was adjudicated a third felony offender and the trial court sentenced him to life in prison without *52 benefit of probation, parole, or suspension of sentence. On appeal, Bush urges through his appellate counsel nine assignments of error, three of which are expressly abandoned. In addition, Bush advances four assignments of error in a pro se brief. Finding no merit to any assignments of error, we affirm the conviction and the sentence of the defendant.

Facts
In May of 1995, the defendant, Brian Bush, was extradited from Nevada, where he was incarcerated for robbery and possession of a firearm by a felon, to Louisiana to face charges for aggravated rape and kidnapping. On November 13, 1995, Bush was transported from the Caddo Correctional facility to the Viral Disease Clinic near Schumpert Hospital in Shreveport to receive treatment for the AIDS virus. While the inmates are normally in leg irons and handcuffs, Bush was not restrained because he was using crutches for a two-month-old sprained ankle. At the clinic, Bush was left unsupervised in a treatment room for several minutes, at which time he escaped through an unlocked window in the room.
Bush ran approximately a half a mile to a nearby neighborhood and hid in a shed. Upon being discovered in the shed by a child, he ran back towards Schumpert Hospital and hid in a trash dumpster for several hours. Once it was dark, Bush decided to exit the dumpster and steal a car from the hospital parking lot. However, due to a security device in the car which shut the engine off, his attempt to drive away was unsuccessful. Bush was observed running from the parked car by Deputy McLamb. McLamb called out to the man and asked if he was Brian Bush to which he responded affirmatively. Bush was then apprehended without incident.
Bush was charged by bill of information with simple escape, a violation of La. R.S. 14:110. After hearing all of the evidence, the jury convicted Bush as charged. Subsequently, the trial court sentenced him to five years in prison. After trial, the State filed a habitual offender bill of information against Bush alleging third felony offender status. On February 13, 1998, Bush was adjudicated a third felony offender and sentenced to life in prison. It is from this conviction and sentence that Bush now appeals.

Sufficiency of the Evidence
The relevant inquiry when reviewing a conviction for the sufficiency of the evidence is whether, upon viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). That standard, initially enunciated in Jackson, and now legislatively embodied in La.C.Cr.P. art. 821, is applicable in cases involving both direct and circumstantial evidence. State v. Cotton, 25,940 (La.App.2d Cir.3/30/94), 634 So.2d 937. For circumstantial evidence to sustain a conviction, upon assuming every fact to be proved that the evidence tends to prove, the evidence must exclude every reasonable hypothesis of innocence. Id. at 939. Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. Id.
In the absence of internal contradiction or irreconcilable conflict with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Ford, 28,724 (La. App.2d Cir.10/30/96), 682 So.2d 847. The appellate court will not assess the credibility of witnesses or reweigh the evidence to overturn the fact-finder's determination of guilt. State v. Rhodes, 29,207 (La.App.2d Cir.1/22/97), 688 So.2d 628, writ denied, 97-0753 (La.9/26/97), 701 So.2d 980.
In the instant case, Deputy Hardy stated that Bush escaped from his custody *53 by climbing out the window at the medical clinic during the time that Bush had been left alone in an examination room at the clinic. Bush also admitted escaping to Deputy Tabor, Deputy Scholtz, and Deputy Smith. The defendant further admitted escaping when he testified at trial. Therefore, the evidence was sufficient to prove him guilty beyond a reasonable doubt.
However, in his defense, Bush argues that his escape from the custody of Deputy Hardy was justified and that the trial court erred in not instructing the jury on justified escape. Bush was sent to Louisiana from Nevada to face charges pending here and was scheduled to return to Nevada following disposition. He claims that the treatment he is receiving from LSU's Viral Disease Clinic in Shreveport for the AIDS virus is far superior to the treatment he received in Nevada. Therefore, he argues that if sent back to Nevada, his chances for survival will be greatly decreased. For this reason, Bush asserted that he was faced with a specific threat of death which justified his escape from the clinic.
In State v. Boleyn, 328 So.2d 95 (La.1976), the court recognized an extremely limited defense of justification for escape. The defense has five elements which the defendant must establish:
(1) The prisoner is faced with a specific threat of death, forcible sexual attack, or substantial bodily injury in the immediate future;
(2) There is no time for a complaint to the authorities or there exists a history of futile complaints which make any result from such complaints illusory;
(3) There is not time or opportunity to resort to the courts;
(4) There is no evidence of force or violence used towards prison personnel or other "innocent" persons in the escape; and
(5) The prisoner immediately reports to the proper authorities when he has attained a position of safety from the immediate threat.
Id. at 96. Before submission of the defense to the jury, the defendant must lay an appropriate foundation. Id.
In this instance, Bush did not show that he made any complaints to the court or to jail officials about his treatment in Nevada or that he sought to stop his extradition back to Nevada. Furthermore, considering that Bush hid in a dumpster for hours and attempted to steal a car to get away, there is no indication that he intended to report himself to the proper authorities. Given that the Boleyn factors require a showing of an immediate threat before justification can be considered, the trial judge did not err in denying the jury instruction on justified escape. As the defendant's actions were not justified, the evidence was sufficient to prove him guilty beyond a reasonable doubt.

Other Crimes
In Bush's second and third assignments, he alleges that the trial court erred in allowing the state's witnesses to make reference to the fact that he stole a car after his escape from custody. A hearing concerning the evidence was held prior to the state's opening statement, and the court ruled the statements were admissible as res gestate. However, the court prohibited the prosecutor or the witnesses from using the words "steal" or "burglary." Evidence of the theft was presented through the testimony of Deputy McLamb, the arresting officer, Deputy Green, and the defendant's taped statement. The state's witnesses did follow the court's instructions.
Generally, evidence of other acts of misconduct is not admissible; however, there are statutory and jurisprudential exceptions to this rule. Evidence of other acts is allowed to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction *54 that is the subject of the present proceeding." La. C.E. art. 404(B)(1). One of these factors must be at issue, have some independent relevance, or be an element of the crime charged in order for the evidence to be admissible.
In State v. Knapp, 378 So.2d 911 (La. 1979), the defendant was accused of escape, and the trial judge allowed the prosecution to discuss the taking of a truck in order to show how the defendant left the area. However, the trial judge told the police officers not to use the word "stole." Id. at 915. The Louisiana Supreme Court found that as the truck was instrumental in effecting the defendant's escape, evidence that the defendant took the truck satisfied the connexity requirement.
Similarly in this case, the car theft was sufficiently intertwined with the escape so that the state could not accurately present its case without reference to the theft. The stolen car is what drew Deputy McLamb's attention to the defendant. Also, the taking of the car and Bush's statement to McLamb about his intent to head north were relevant to disprove the defendant's allegation that his escape was justified. The trial court was correct in allowing the state's witnesses to make reference to the fact that Bush attempted to flee the area in a car that he did not own after his escape from custody. Therefore, this assignment of error lacks merit.

Habitual Offender Adjudication
In this assignment of error, Bush alleges that the trial court erred in finding him to be a third felony offender. Bush filed a motion to quash the habitual offender bill of information for deficiencies regarding his prior convictions in Florida and Pennsylvania.
In Florida in 1980, Bush was convicted of robbery, sexual battery, and three counts of burglary. As part of a plea bargain, he was given concurrent sentences of 15 years. The defendant was represented by counsel at his guilty plea. The defendant alleges these convictions cannot be used for enhancement under La. R.S. 15:529.1, as he claims that these were juvenile adjudications when he was sixteen years old and that he would not have been tried as an adult for these crimes in Louisiana.
Where an individual has been accorded treatment as an adult by an out-of-state court and convicted of a crime qualifying as a felony in Louisiana, the fact that the defendant would have been considered a juvenile in this state does not preclude the use of such conviction as a predicate felony under La. R.S. 15:529.1. State v. Youngblood, 26,722 (La.App.2d Cir.12/22/94), 647 So.2d 1388, writ denied, 95-0221 (La.3/17/95), 651 So.2d 277. There is no dispute that Bush was in fact treated as an adult by the Florida court in 1980. His Florida sentence indicates that he was tried as an adult in circuit court, not juvenile court.
In addition, the defendant alleges the state did not meet its burden of proving that his Florida guilty pleas were knowing and voluntary under the standards established in State v. Shelton, 621 So.2d 769 (La.1993). In particular, Bush claims that the trial judge did not inform him of the penalty range for the offenses.
A guilty plea will not be considered voluntarily and knowingly entered unless the trial court apprized the defendant of the possible range of sentences for the offense to which he pleads guilty. State v. Garth, 622 So.2d 1189 (La.App. 2d Cir.1993). The trial judge is not required to specifically inform the defendant of the possible penalties for the offense to which he pleads as long as there is an affirmative showing on the record that the defendant knew of the possible penalties. State v. Clay, 30,770 (La.App.2d Cir.5/13/98), 714 So.2d 123; State v. Cassels, 27,227 (La. App.2d Cir.2/28/96), 669 So.2d 715, writ denied, 97-3090 (La.5/15/98), 719 So.2d 455.
*55 During Bush's plea colloquy, the judge informed the defendant of his Boykin rights, and the judge asked the defendant if he had been apprized of the minimum and maximum penalties that could be imposed for the convictions. The judge then asked the defendant if his attorney had informed him of the minimum and maximum sentences he could have received on each charge. The defendant answered "yes" to each question. Since the state produced a "perfect" transcript of the defendant's guilty plea from Florida and this transcript indicates the defendant was informed of and waived his Boykin rights and was apprized of the possible range of sentences, the state appears to have met its burden of proving the validity of the guilty plea.
In Pennsylvania in 1992, Bush pled guilty to kidnapping, deviate sexual intercourse, theft, receiving stolen property, carrying a firearm without a license, possession of a firearm by a former convict, unlawful restraint, two counts of robbery, and three counts of rape. Bush now disputes the validity of his plea citing the use of a guilty plea form and the failure of the Pennsylvania court to have specifically discussed the Boykin rights with Bush during the plea colloquy.
In State v. Tucker, 405 So.2d 506 (La. 1981), the court found that a minute entry concerning the abbreviated plea colloquy along with a well-executed waiver of rights form signed by the defendant, his attorney, and the trial judge constituted a sufficient affirmative showing in the record that the defendant knowingly and intelligently waived his Boykin rights. In the plea form, the defendant admitted his guilt, he acknowledged the potential sentence, and he indicated that he understood and waived his rights to trial, to confrontation, and against self-incrimination. Id. at 509.
In the Pennsylvania proceeding, Bush was represented by counsel when he pled guilty. In the guilty plea form, Bush indicated he understood his right to a jury trial, the right to remain silent, and the right to confront his accusers. Bush indicated he understood that by pleading guilty, he was giving up those rights. In addition, he indicated that he was aware of the permissible sentence ranges that could be imposed. The plea form was signed by Bush, his attorney, and the judge.
During the plea colloquy, the judge questioned Bush to determine his competence, and all of the charges against him were read in court. Bush stated that he understood the charges, and the prosecutor summarized the evidence the state had against him. Bush again stated that he was guilty, and he stated that he understood all of the questions in the plea form. He also indicated that his attorney was available when he went over the plea form. Based upon this, the judge found the plea to be knowingly, intelligently, and voluntarily made.
The Pennsylvania guilty plea appears to be valid. Contrary to the defendant's allegations, the plea form does indicate that the defendant understood he was waiving his Boykin rights. While the defendant did leave one question, which concerned reasonable doubt, on the form unanswered, the fact that he answered all of the other questions indicates that he understood that particular question. Also, the defendant told the judge that he understood all of the questions in the form. Under these circumstances and in light of the prior ruling in State v. Tucker, supra, we find that the Pennsylvania conviction was shown to have resulted from an informed and voluntary guilty plea.
The defendant also alleges the evidence introduced at the multiple offender hearing was insufficient to prove his identity as the person convicted in Pennsylvania. We find no merit to this argument. The trial judge has the right to take judicial notice of any prior proceeding which was a part of the same case he has previously tried. State v. Martin, 400 So.2d 1063 (La.1981); State v. Jones, 332 So.2d 461 *56 (La.1976); State v. O'Day, 191 La. 380, 185 So. 290 (1938).
At the present trial, the defendant admitted to all of the Pennsylvania convictions. The defendant even identified his Pennsylvania rape victim by name when he admitted that he did not inform her that he was HIV positive. The victim's name was mentioned in the Pennsylvania bill of information and during the defendant's plea colloquy. The evidence was sufficient to prove that the defendant was the person convicted of the Pennsylvania crimes.
Finally, Bush claims his right against self-incrimination was violated by the use of his trial testimony during the habitual offender hearing since he was not told that his testimony could be used against him at a subsequent proceeding. This allegation is also without merit. Before the defendant testified at trial, the judge informed him that he did not have to testify, and the defendant stated that he had discussed the consequences of testifying with his attorneys. The judge was not required to tell the defendant that his testimony might be used against him in the subsequent habitual offender proceeding. The defendant's Fifth Amendment rights were not violated. Accordingly, Bush's assignments of error regarding his adjudication as a third felony offender are without merit.

Excessive sentence
Bush contends that his sentence is excessive. Specifically the defendant complains that the mandatory sentence of life imprisonment for a third felony offender is excessive considering he was only sentenced to five years at hard labor for his conviction for simple escape which was the third felony. We do no agree with this contention.
The inquiry for a claim of excessive sentence is whether the sentence imposed is too severe considering the circumstances of the case and the background of the defendant. A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Wilkerson, 29,979 (La.App.2d Cir.10/29/97), 702 So.2d 64. A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Smith, 433 So.2d 688 (La.1983); State v. Wilkerson, supra.
La. R.S. 15:529.1 provides, in pertinent part:
A. (1) Any person who, after having been convicted within this state of a felony ... thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as follows:
(b)(ii) If the third felony or either of the two prior felonies is a felony defined as a crime of violence under R.S. 14:2(13) ... or any other crime punishable by imprisonment for more than twelve years, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
The defendant's prior offenses in Florida and Pennsylvania include burglary, sexual battery, robbery, possessing a stolen vehicle, kidnapping, possession of a firearm by a felon, and aggravated rape. La. R.S. 14:2(13)(d) stipulates that sexual battery, aggravated rape, simple kidnapping, and simple robbery are all crimes of violence.
Thus in the present case Bush was adjudicated a third felony offender pursuant to the statute and faced a mandatory life sentence because (i) the two prior offenses and the present offense were felonies and (ii) at least one of the three felonies was a crime of violence. The statute does not require that the third felony be a crime of violence, and in this instance, in both of the two predicate felony convictions, crimes of *57 violence were present. Therefore, once Bush achieved the status of third felony offender, the habitual offender statute mandated the court impose a life sentence. State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672. Although, in State v. Dorthey, supra, the Louisiana Supreme Court has stated that courts have the power to declare a mandatory minimum sentence excessive under Article I, Section 20 of the Louisiana Constitution, this power should only be exercised in rare cases and only when the court is firmly convinced that the minimum sentence is excessive. State v. Johnson, supra at 676. Considering Bush's violent and extensive criminal record, the mandated sentence is not excessive. This assignment lacks merit.

Pro se Assignments
Bush filed a supplemental brief where he alleged various assignments of error, some of which were argued by his appellate counsel and some of which were not. The additional assignments alleged by the defendant are that (1) the use of the Pennsylvania convictions in the habitual offender adjudication resulted in a double enhancement since one of those convictions was for possession of a firearm by a convicted felon; (2) the Florida convictions could not be used for enhancement because they were used for enhancement on prior occasions; (3) since he was sentenced to life in prison, the charge should have been brought by an indictment instead of a bill of information; and (4) since he was sentenced to life in prison, he should have been tried by twelve jurors instead of six.
The defendant's first two allegations were not mentioned either in his motion to quash the habitual offender bill of information or in the hearings held concerning the motion to quash. A new basis for an objection cannot be raised for the first time on appeal. State v. Cressy, 440 So.2d 141 (La.1983); State v. Lozier, 375 So.2d 1333 (La.1979). Thus, these assignments appear to have been waived.
A prosecution for an offense punishable by death or life in prison shall be instituted by a grand jury indictment, and other prosecutions in a district court shall be instituted by an indictment or by a bill of information. La.C.Cr.P. art. 382. The constitutional classification of felonies for initiation of prosecution by information or grand jury indictment is determined by the legislative penalty provided by the statute defining the crime and providing for its punishment. State v. Alexander, 325 So.2d 777 (La.1976). This classification is founded upon the general penalty applicable to the substantive crime charged by the initiation of the prosecution for it, not upon an enhanced penalty to which the defendant might be subject because of prior convictions. Id. Therefore, the charge against the defendant was properly brought by a bill of information and his third assignment of error lacks merit.
In his fourth assignment of error, Bush contends that he should have been tried by twelve jurors. Cases in which punishment is necessarily confinement at hard labor shall be tried to a jury composed of twelve jurors, ten of whom must concur to render a verdict, and cases in which the punishment may be confinement at hard labor shall be tried by a jury composed of six members, all of whom must concur to render a verdict. La. C.Cr.P. art. 782. The penalty for simple escape is imprisonment with or without labor for not less than two years nor more than five years. La. R.S. 14:110. The applicability of the Habitual Offender Law has no bearing on the determination of the number of persons composing the jury under La.C.Cr.P. art. 782. State v. Sherer, 354 So.2d 1038 (La.1978). Therefore, the use of a six-person jury was correct. This assignment lacks merit.

Error Patent
Our error patent review disclosed that during the habitual offender hearings, the trial court failed to read the habitual *58 offender bill of information in court, and the defendant did not enter a plea. La. R.S. 15:529.1(A)(1)(a)(ii). Also, the defendant was not informed of his right to remain silent at the hearings.
Even though Bush was not informed of his constitutional and statutory rights, where the defendant exercised his right to remain silent and to have a full evidentiary hearing, he suffered no prejudice warranting reversal of his multiple offender adjudication. State v. Stewart, 27,049 (La. App.2d Cir.5/10/95), 656 So.2d 677. Furthermore, the defendant did not testify at the habitual offender hearings. In addition, the filing of the motion to quash and the subsequent hearings indicate that the defendant was well aware of the convictions being used against him. While the trial court erred in not informing Bush of the charges against him in court and in not telling the defendant of his right to remain silent, the errors were harmless and should not require a reversal of the habitual offender adjudication.

Conclusion
For the foregoing reasons, the conviction and sentence are affirmed.
AFFIRMED.