775 So.2d 596 (2000)
STATE of Louisiana, Appellee,
v.
Fair Wayne BRYANT, Appellant.
No. 34,244-KA.
Court of Appeal of Louisiana, Second Circuit.
December 6, 2000.
*598 Amy C. Ellender, Louisiana Appellate Project, Counsel for Appellant.
Fair Wayne Bryant, pro se.
Richard Ieyoub, Attorney General, Paul J. Carmouche, District Attorney, Tommy J. Johnson, Bruce Dorris, Assistant District Attorneys, Counsel for Appellee.
*599 Before BROWN, WILLIAMS and KOSTELKA, JJ.
BROWN, J.,
A jury convicted defendant, Fair Wayne Bryant, of one count of attempted simple burglary of an inhabited dwelling. Thereafter, defendant was adjudicated a fourth felony offender with a prior crime of violence and sentenced to life imprisonment without benefit. Defendant has appealed, urging four assignments of error. For the reasons set forth below, we affirm.

FACTS
At about 3:30 a.m. on January 5, 1997, Christina Ray and a friend were playing on a computer at the Rays' home at 4221 Reily Lane in Shreveport when the girls heard rustling noises coming from the carport storeroom. Christina looked out of a window in the kitchen door and saw that the door was open and that the light was on in the storeroom. She called out for her parents and Christina's father, Charles Ray, awoke and went to investigate. Mr. Ray observed a person bent over in the storage room. Mr. Ray opened the door and shouted at the intruder, who ran away across a neighbor's yard. Mr. Ray noticed that the intruder was wearing a gray jacket, blue jeans with a white stain on one leg, and a dark colored cap.
On his way back into the house, Mr. Ray noticed a blue Ford Aerostar van parked in a no-parking zone in front of his house. Mr. Ray, a Ford technician, was certain about the make and model of the vehicle. Mr. Ray called 911 and reported the incident. Mr. Ray also told the 911 dispatcher that the intruder was a young white male. The dispatcher related the information to the Shreveport Police Department (SPD) patrol units in the area. Shortly thereafter, Mr. Ray saw someone get into the blue van and drive away; Mr. Ray promptly reported this information to police.
Mr. Ray checked out the storeroom and discovered that his string trimmer, chain saw, blower, drill and saw were all piled up on the floor in the middle of the room. Mr. Ray testified that he had not left these items on the floor.
SPD Officer Joseph Dews responded to the call. Officer Dews testified that he was acting upon the information that "the resident called back and said that he now saw this suspect get into a blue Aerostar van and headed (sic) off towards Kings Highway, so I started looking for the van." About six blocks away from the Rays' house, Officer Dews saw a blue Aerostar van which he stopped.
Officer Dews approached the van and, for the first time, saw the driver, who was defendant, a 39-year-old black male. Officer Dews said that defendant was "sweating really bad" and had a screwdriver in his lap. Officer Dews asked defendant to get out of the van and then asked defendant for his drivers' license. Defendant had no drivers' license but produced a Social Security card. Officer Dews explained to defendant why he had been stopped and then read defendant his Miranda rights. The officer patted down defendant and then placed him in the back of the patrol unit.
By this time, other SPD officers had arrived and, about ten minutes after Officer Dews stopped defendant, an officer brought Charles Ray to the scene to look at defendant. When Mr. Ray arrived, he saw a large bleached-out section on defendant's pants and from that observation identified defendant as the person who had been in the storeroom. At that time defendant was arrested. A subsequent search of defendant's van revealed a gray coat and a set of hedge clippers. Charles Ray examined the hedge clippers and identified them as his own by virtue of the brand name and a white paint stain.
The next day, SPD Detective R.L. Benton spoke with defendant. During the interview, defendant related that he was on his way to Bossier City from Cedar Grove when he got lost on an unfamiliar street. *600 Defendant stated that while he was lost, his van stalled. Defendant admitted that he went into the Rays' storeroom but said that he was simply looking for a gasoline can. Defendant said that he did not know who lived in the Ray home and did not believe that he had permission to take a gasoline can. Defendant stated that the door to the storeroom was unlocked. Defendant told Det. Benton that he did not take the hedge clippers. According to defendant, the clippers found in the van belonged to his wife.
Defendant did not testify but his first cousin, Kenneth Givens, testified concerning defendant's connection to the blue van. Givens, who was then serving a six-month sentence for DWI on Barksdale AFB, testified that he had loaned defendant his blue van. Givens said that the van's ignition had previously been damaged in a theft and that one needed a screwdriver to start the vehicle. He also said that the van was prone to stalling because the screwdriver would fall out of the ignition switch. Givens stated that he had recently used the van to move his personal belongings from Tennessee to Louisiana and that the hedge clippers in the van belonged to him.
Trial was held on July 9, 1997. The jury convicted defendant of attempted simple burglary of an inhabited dwelling. Defendant filed motions for post-verdict judgment of acquittal and new trial which the court denied on August 12, 1997. On that same day the state filed an habitual offender bill against defendant, charging him as a fourth felony offender. On April 17, 1998, defendant filed a motion to quash this bill, urging various defects in the proceedings of his prior convictions. On July 30, 1998, the court held an habitual offender hearing. At this hearing, defense counsel withdrew the motion to quash. Fingerprint identification linked defendant to four previous felonies and defendant was adjudicated a fourth felony offender.
On January 4, 2000, the state filed a second habitual offender bill against defendant. This bill substituted defendant's 1980 guilty plea to attempted armed robbery for one of the other offenses. The amended bill set forth details of the prior predicate offenses as follows:
(1) March 15, 1979: Defendant and an accomplice, armed with a pistol, robbed a cab driver. During the robbery, defendant's accomplice shot the cab driver. Defendant pled guilty to attempted armed robbery on June 3, 1980, and was sentenced to ten years at hard labor without benefit.
(2) September 23, 1987: Defendant and an accomplice broke into a store and stole merchandise. Defendant pled guilty on July 13, 1987, to illegal possession of stolen things with a value over $500 and was sentenced to two years at hard labor.
(3) October 16, 1989: Defendant forged and passed a check for $150. Defendant pled guilty to attempted forgery on January 17, 1991, and was sentenced to 18 months at hard labor.
(4) November 19, 1991: Defendant and an accomplice broke into a residence and stole items of personal property. Defendant pled guilty to simple burglary of an inhabited dwelling on March 19, 1992, and was sentenced to four years at hard labor without benefit.
On February 9, 2000, defendant filed a motion to quash this bill, alleging various defects in the prior proceedings. On that same day the court conducted a second multiple offender hearing. The court considered and rejected the allegations raised in defendant's motion to quash. As in the first multiple offender hearing, fingerprint evidence proved that defendant was the same Fair Wayne Bryant who pled guilty to the four prior offenses. Pursuant to La. R.S. 15:529.1(A)(1)(c)(ii), the court sentenced defendant to life imprisonment at hard labor without benefit. Defendant's counsel made a general objection to the sentence. On February 17, 2000, defendant filed a written motion to reconsider *601 sentence which was denied by the court. Bryant now appeals, urging four assignments of error.[1]

DISCUSSION

Sufficiency of the Evidence
Defendant asserts that the evidence failed to show that he had the specific intent to commit a theft in the Rays' storeroom. Defendant also contends that the state failed to prove that the Rays' storeroom was an inhabited dwelling.
Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Bosley, 29,253 (La.App.2d Cir.04/02/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333; State v. Bellamy, 599 So.2d 326 (La.App. 2d Cir.1992), writ denied, 605 So.2d 1089 (La.1992).
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La. App.2d Cir.09/25/98), 719 So.2d 610, writ denied, 98-2723 (La.02/05/99), 737 So.2d 747.
This court's authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 10(B); State v. Hudson, 33,357 (La.App.2d Cir.05/10/00), 760 So.2d 591. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Bosley, supra. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. White, 28,095 (La.App.2d Cir.05/08/96), 674 So.2d 1018, writ denied, 96-1459 (La.11/15/96), 682 So.2d 760, writ denied, 98-0282 (La.06/26/98), 719 So.2d 1048.
La. R.S. 14:62.2 provides in part:
Simple burglary of an inhabited home is the unauthorized entry of any inhabited dwelling, house, apartment or other structure used in whole or in part as a home or place of abode by a person or persons with the intent to commit a felony or any theft therein, other than as set forth in Article 60.
La. R.S. 14:27 provides in part:
(A) Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act. La. R.S. 14:10. Specific intent need not be proven as a fact *602 and may be inferred from the circumstances of the event. State v. Wilson, 30,634 (La.App.2d Cir.05/13/98), 714 So.2d 126, 130.
The state proved beyond a reasonable doubt that defendant possessed the specific intent to commit a theft. Through the testimony of Mr. Ray, the state showed that defendant entered the residence in the dark during the early hours of the morning and that he fled when confronted by the homeowner. This conduct is quite similar to that of the defendant in State v. Wilson, supra. Flight is evidence of consciousness of guilt and is a circumstance from which a fact-finder may infer guilt. State v. Fuller, 418 So.2d 591 (La.1982); State v. Bellamy, supra.
Likewise, Mr. Ray testified that several valuable lawn care items were piled up on the floor of his storage room and that he had not left the items there. The obvious conclusion to be drawn from this testimony is that defendant was gathering these items in order to steal them. Compare State v. Richardson, 547 So.2d 749 (La.App. 4th Cir.1989).
Defendant further contends that the state failed to prove that the storage room was an "inhabited dwelling" for purposes of La. R.S. 14:62.2. It is well established that criminal statutes are to be strictly construed and any doubt as to the extent of the coverage of a criminal statute must be decided in favor of the accused and against the state. State v. Blackwell, 32,477 (La.App.2d Cir.10/27/99), 746 So.2d 205. However, La. R.S. 14:62.2 is not drawn as narrowly as defendant argues. The statute provides, in part:
... any inhabited dwelling, house, apartment or other structure used in whole or in part as a home or place of abode by a person or persons ...
Black's Law Dictionary, Sixth Edition (West, 1990), defines "structure" as
Any construction, or any production or piece of work artificially built up or composed of parts joined together in some definite manner. That which is built or constructed; an edifice or building of any kind. A combination of materials to form a construction for occupancy, use or ornamentation whether installed on, above, or below the surface of a parcel of land.
Although the carport storage room had no direct entrance into the residence, it nevertheless formed part of the structure of the house; the room was under the same roof as the house. By definition, the storage room formed part of the structure of the house and the structure was used "in part" as a home or place of abode.
These assignments of error are without merit.

Denial of Motion to Suppress
Defendant filed his motion to suppress on July 7, 1997, two days before trial; the trial court allowed the filing under La. C.Cr.P. art. 703(C) apparently because defendant's counsel discovered the grounds for the motion only at this late date. The motion asserted, inter alia, that defendant was unlawfully detained and that the physical evidence and defendant's statements derived therefrom should have been suppressed.
In reviewing the trial court's ruling on a motion to suppress, the court may consider the evidence adduced at the trial in addition to the evidence adduced at the motion to suppress hearing. State v. Green, 94-0887 (La.05/22/95), 655 So.2d 272. La. C.Cr.P. art. 215.1 provides in part:
A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
The totality of the circumstances must be considered in determining whether the requisite reasonable suspicion exists to justify an investigatory stop. Although *603 something less than probable cause, reasonable suspicion is more than a hunch. The officer must be able to articulate facts, which, in conjunction with their inferences and the officer's experience, give rise to a reasonable suspicion that criminal activity is afoot. State v. Wesley, 28,012 (La.App.2d Cir.04/3/96), 671 So.2d 1257, writ denied, 96-1127 (La.10/04/96), 679 So.2d 1379. Reasonable suspicion can arise from information less reliable than that required for probable cause. Alabama v. White, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). Both the quantity and quality of the police's information, the "totality of the circumstances," determine whether reasonable suspicion exists. State v. Belton, 441 So.2d 1195 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct.2158, 80 L.Ed.2d 543 (1984).
As noted, the suspect description given by Mr. Ray to police was of a young white male wearing a cap, gray jacket and jeans. Defendant is black, middle-aged and was not wearing a cap or gray jacket when the van he was driving was stopped. Officer Dews, who kept defendant until Mr. Ray could come to the scene, explained why he detained defendant despite the mismatched description:
The reason I stopped the van is because the van fit the description, blue Aerostar van. Stopped it. Mr. Bryant was in the van. It was under my understanding that you can detain somebody for a short time. The gentleman lived right around the corner. He wouldn't be detained long. You know, people make mistakes if they're excited. He's obviously been running. He's excited. He's just an ordinary citizen. He's not used to that type stuff. Just put things together. You get the big picture and then put things together and try to see what you can come up with and that's what I did.
Indeed, Mr. Ray observed defendant for only a short period in conditions of dim light and admitted that he would likely be able to identify the suspect only by clothing and not by facial features. In his initial call to police, Mr. Ray did not know whether the Aerostar van belonged to the person who had broken into his carport but asked for an officer to come and investigate the van. At trial, Officer Dews testified that he learned that
[A]s I was in route over there, the resident called back and said that he now saw this suspect get into a blue Aerostar van and head off towards Kings Highway, so then I started looking for the van.
There is a presumption that information given by citizen informants is inherently credible. State v. Morris, 444 So.2d 1200 (La.1984). Officer Dews stopped the van only minutes after the initial dispatch and he made the stop close to the victim's home, in a residential area, at approximately 3:30 a.m. Although defendant was not a young white male, he had a screwdriver in his lap and was sweating profusely, facts that aroused the officer's suspicions. The precise description of the vehicle, its proximity to the victim's home at the late hour and defendant's suspicious appearance, under the totality of the circumstances, led Officer Dews reasonably to suspect that defendant had some involvement in this particular offense. The officer pursued a means of investigation that was likely to confirm or dispel suspicions quickly, during which time it was necessary to detain defendant. See United States v. Sharpe, 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985). The officer detained defendant for only a few minutes until Mr. Ray was brought to the scene.
The brief detention of defendant was reasonable under the circumstances. The trial court did not err in denying defendant's motion to suppress. This assignment of error is without merit.

Fourth Felony Offender Adjudication
Defendant first argues that constitutional prohibitions against double jeopardy prohibit the imposition of a more severe *604 sentence after a second habitual offender hearing. In Monge v. California, 524 U.S. 721, 118 S.Ct. 2246, 141 L.Ed.2d 615 (1998), the supreme court held that the prohibition against double jeopardy in the federal constitution does not apply to criminal sentencing procedure outside of the death penalty context. Louisiana courts likewise have not held the state constitutional provision applicable to non-capital sentencing. See, e.g., State v. Picot, 98-2194 (La.App. 4th. Cir.11/10/98), 724 So.2d 236. Double jeopardy thus did not prevent the state from bringing the second habitual offender proceeding against defendant.
Defendant next challenges the use of his prior guilty pleas in the enhancement proceeding on the grounds that in none of these prior cases did the court follow the guidelines of La.C.Cr.P. art. 556.1. Particularly, defendant alleges that the courts in these prior offenses: 1) failed to ascertain Bryant's educational background; 2) failed to determine Bryant's ability to understand the plea or its consequences; and, 3) failed to advise him that future sentences could be enhanced.
Louisiana's habitual offender law, La. R.S. 15:529.1(D)(1)(b), provides in pertinent part:
Except as otherwise provided in this Subsection, the district attorney shall have the burden of proof beyond a reasonable doubt on any issue of fact.... A person claiming that a conviction or adjudication of delinquency alleged in the information was obtained in violation of the Constitutions of Louisiana or of the United States shall set forth his claim, and the factual basis thereof, with particularity in his response to the information. The person shall have the burden of proof by a preponderance of the evidence, on any issue of fact raised by the response. Any challenge to a previous conviction or adjudication of delinquency which is not made before sentence is imposed may not thereafter be raised to attack the sentence.
In State v. Shelton, 621 So.2d 769, 779-780 (La.1993), a case predating La.C.Cr.P. art. 556.1, the supreme court explained the burden of proof scheme in habitual offender proceedings:
If the defendant denies the allegations of the bill of information, the burden is on the State to prove the existence of the prior guilty pleas and that defendant was represented by counsel when they were taken. If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden if it introduces a "perfect" transcript of the taking of the guilty plea, one which reflects a colloquy between judge and defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self incrimination, and his right to confront his accusers. If the State introduces anything less than a "perfect" transcript, for example, a guilty plea form, a minute entry, an "imperfect" transcript, or any combination thereof, the judge then must weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving the defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of the three Boykin rights. (Footnotes omitted.)
The state produced transcripts of the Boykin collogues for defendant's prior offenses and in each case the court informed defendant who was each time represented by counselof his right to a jury trial, his right to confront his accusers and his privilege against self-incrimination; in each case defendant waived those rights. Louisiana courts have not required the state to prove the further elements that defendant raises. Even in the context of a *605 direct challenge to a guilty plea, the failure to advise of sentencing exposure does not form part of the core Boykin requirements for taking a plea. State v. Guzman, 99-1753 (La.05/16/00), 769 So.2d 1158. Nothing about the plea collogues suggests that defendant did not understand the prior proceedings.
In his pro-se assignment of error, defendant complains that his 1987 guilty plea to illegal possession of stolen things over $500 was involuntary because he contested the value of the items stolen before entering his guilty plea. Defendant was initially charged with possession of stolen things of a value greater than $100 but less than $500 but, upon defendant's agreement to plead guilty, the D.A. amended the charge to reflect the greater amount.
Briefly, the facts of that offense were that a Radio Shack manager observed two individuals come out of a broken window of the Radio Shack store, get into a car and speed away. The manager phoned the police and described the getaway car and police apprehended defendant and a companion after a car chase across Shreveport. Stolen items were found in the car and the value of the items was discussed during the plea:
Court: What kind of items were they? What was their value?
D.A.: The items were three telephones, a remote control and a robot. For the purpose of this plea all the items exceeded five hundred dollars in value. However, Mr. McGinn checked and some prices have come down in value. However, this was during the Christmas season and the value of the items at that time was over five hundred dollars.
Court: Mr. Bryant, are those facts correct?
Bryant: Yes, sir. As far as I understand to my knowledge the merchandise wasn't suppose to be over five hundred dollars.
Court: Do you understand that you are pleading guilty to the possession of stolen things over five hundred dollars?
Bryant: Yes, sir.
Court: Do you understand the facts as the DA stated puts you in possession of the items at the time you were arrested?
Bryant: Yes, sir.
Court: Do you have any questions about that?
Bryant: No, sir.
Court: The law says you have to have knowledge of the items being stolen or have good reason to believe they were the subject of a theft. Is that correct, sir?
Bryant: Yes, sir.
. . .
Court: Is your decision to plead guilty your own decision without anyone having forced you or coerced you to do so? Mr. Bryant, is that your decision?
Bryant: Yes, sir.
. . .
Court: Do you understand and has your attorney explained to you the nature of the charge of illegal possession of stolen things valued at over five hundred dollars? Mr. Bryant?
Bryant: Yes, sir.
. . .
Court: Do either of you have any questions and are you satisfied with the work of your attorney? Mr. Bryant?
Bryant: I don't have any questions.
. . .
Court: And are you satisfied with the work of your attorney?
Bryant: Yes, sir.
Based on the transcript of this colloquy, the trial court found that defendant's 1987 plea was knowingly and voluntarily made despite defendant's question about the value of the value of the stolen items. The colloquy shows that the trial court made a further inquiry of defendant when he raised the value issue and ensured that defendant understood what he was pleading guilty to and why he was doing so. *606 Further, the record demonstrates that defendant was indeed initially charged with possession of items valued less than $500. In light of defendant's answers to the judge's subsequent questions, the colloquy shows defendant's plea to be voluntary.
These assignments of error are without merit.

Excessiveness of Sentence
Defendant contends that his life sentence is excessive.
Whether the sentence imposed is too severe depends upon the circumstances of the case and the background of the defendant. A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Wilkerson, 29,979 (La.App.2d Cir.10/29/97), 702 So.2d 64. A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Smith, 433 So.2d 688 (La.1983).
In this case, La. R.S. 15:529.1 mandated a life sentence for defendant. As this court stated in State v. Ponsell, 33,543 (La.App.2d Cir.08/23/00), 766 So.2d 678:
Although, in State v. Dorthey, supra, the Louisiana Supreme Court stated that courts have the power to declare a mandatory minimum sentence excessive under Article I, Section 20 of the Louisiana Constitution, this power should only be exercised in rare cases and only when the court is firmly convinced that the minimum sentence is excessive. State v. Johnson, 97-1906 (La.03/04/98), 709 So.2d 672; State v. Bush, 31,710 (La. App.2d Cir.02/24/99), 733 So.2d 49, writ denied, 99-1010 (La.09/03/99), 747 So.2d 536.
Defendant's criminal record, as reflected in the pre-sentence investigation, is reminiscent of the record of the offender in State v. Ignot, 29,745 (La.App.2d Cir.08/24/97), 701 So.2d 1001, writ denied, 99-0336 (La.06/18/99), 745 So.2d 618. Defendant has spent very little of his adult life outside of the criminal justice system. After his April 20, 1986, release from prison for attempted armed robbery, defendant was arrested again on September 24, 1986, for the Radio Shack burglary. He was released from prison on July 23, 1988, and was arrested again for burglary in September 1989. Those charges, as well as theft and drug charges, were dismissed, but in July 1990 defendant was arrested again for forgery. He was thereafter arrested in November 1991 for simple burglary of an inhabited dwelling and in March 1992 was sentenced to serve four years at hard labor without benefit. In November 1993, defendant was arrested for simple burglary of an inhabited dwelling and on July 12, 1995, was sentenced to 11 months at hard labor.
This litany of convictions and the brevity of the periods during which defendant was not in custody for a new offense is ample support for the sentence imposed in this case.[2]
This assignment of error is without merit.

CONCLUSION
For the reasons set forth above, defendant's conviction and sentence are affirmed.
NOTES
[1] Defendant also filed a pro-se brief in which he reurged two of the assignments of error asserted by appellate counsel.
[2] Defendant also complains that the trial court failed to comply with La.C.Cr.P. art. 894.1. Because the sentence imposed is statutorily prescribed, trial court compliance with La.C.Cr.P. art. 894.1 is not mandated. State v. Johnson, 31,448 (La.App.2d Cir.03/31/99), 747 So.2d 61, writ denied, 99-1689 (La.11/12/99), 749 So.2d 653, cert. denied, 529 U.S. 1114, 120 S.Ct. 1973, 146 L.Ed.2d 802 (2000).